J. Alvin **WATSON**, Individually and Mary Ann Watson, Individually, and as Administrators of the Estate of Mark O. Watson, Deceased, Plaintiffs,

v.

**RAIL LINK, INC.**, a Virginia Corporation, and **ITT Rayonier, Inc.**, A Delaware Corporation, Defendants.

Civ. A. No. CV292–252.

United States District Court,
S.D. Georgia,
Brunswick Division.

July 6, 1993.

**488**

Billy N. Jones, Jones, Osteen, Jones & Arnold, Hinesville, GA, for J. Alvin Watson and Mary Ann Watson.

Randall A. Jordan, Jordan & O'Donnell, Rita C. Spalding, Brunswick, GA, for Rail Link, Inc.

James Benjamin Durham, Beth Barwick Mason–Oneal, Fendig, McLemore, Taylor & Whitworth, Brunswick, GA, for ITT Rayonier, Inc.

John Bofinger Miller, Robert Alvin Lewallen, Jr., Miller, Simpson & Tatum, Savannah, GA, for Norfolk Southern.

### ORDER

ALAIMO, District Judge.

On October 16, 1992, Plaintiffs, J. Alvin Watson and Mary Ann Watson ("the Watsons"), instituted this diversity action, alleging negligence by Defendants in both the operation of a freight train over a public crossing and the maintenance of the railroad crossing. The Watsons claim that Defendants' negligence resulted in the fatal collision between a freight train and a vehicle operated by their minor son, Mark O. Watson. This action is presently before the Court on a motion for partial summary judgment by Defendant, Rail Link, Inc. ("Rail Link"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. Specifically, Rail Link contends that the Watsons' state law claim, that Rail Link's locomotive was traveling at an excessive speed, is preempted by federal law. In addition, Rail Link argues that the Watsons' claim, that the crossing was not maintained adequately, must fail because the railroad crossing is owned and maintained by Defendant ITT Rayonier, Inc. ("ITT"). For the foregoing reasons, Rail Link's motion for partial summary judgment will be **GRANTED** in part and **DENIED** in part.

### FACTS

On November 8, 1990, Mark O. Watson was fatally injured in an accident at a railroad crossing in Jesup, Georgia, when his vehicle was struck by a train owned and operated by Rail Link. As a result of the accident, decedent's parents, the Watsons, brought this instant action, claiming that the train was traveling at an excessive speed, among other allegations of negligence. (Compl. at ¶ 8). In addition, the Watsons claim that Defendants negligently maintained the public crossing where the accident occurred by: (1) allowing trees and undergrowth to grow in the right-of-way; (2) failing to maintain efficient warning signs; and, (3) failing to provide proper signals at the crossing. *Id.* at ¶ 9 & 10.

In its present motion for partial summary judgment, Rail Link contends that the Watson's state law negligence claim, premised upon allegations of excessive speed by the locomotive, is preempted by the Federal Railroad Safety Act of 1970 ("the FRSA"), 45 U.S.C. §§ 421–447 (1988 & Supp. II 1990), and the regulations related to train speed of the Federal Railway Administration ("FRA"). *See* 49 C.F.R. § 213.9 (1992). In addition, Rail Link argues that: (1) it is merely an independent contractor providing "switching services" for ITT; (2) its duties with regard to the track and crossing are controlled by a "Switching Agreement" (the "Agreement") between Rail Link and ITT, *see* Pl.'s Mot. for Partial Summ. J. at Ex. B; and, (3) the Agreement between Rail Link

and ITT places the responsibility upon ITT to maintain and repair the track on which Rail Link operates. Rail Link, therefore, asserts that it is entitled to summary judgment on these claims.

## DISCUSSION

### I. Standard for Summary Judgment

Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970). Summary judgment is also proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed. R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Adickes*, 398 U.S. at 158–59, 90 S.Ct. at 1608.

### II. Excessive Speed Claim

■ In *CSX Transp., Inc. v. Easterwood*, — U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), the Supreme Court recently addressed a similar challenge to a claim alleging negligence related to an automobile and train collision at a railroad crossing. In *Easterwood*, the plaintiff's husband was killed when his truck was hit by a train, owned and operated by defendant, at a railroad crossing in Cartersville, Georgia. *Id.* at ——, 113 S.Ct. at 1735, 123 L.Ed.2d at 394. Plaintiff, Easterwood, brought a diversity action, claiming that defendant was negligent in failing to maintain adequate warning devices at the crossing and for operating the train at an excessive speed. The District Court for the Northern District of Georgia granted summary judgment for defendant on the grounds that both claims were preempted by the FRSA. *Easterwood v. CSX Transp., Inc.*, 742 F.Supp. 676, 679 (N.D.Ga. 1990). Upon appeal, the Eleventh Circuit reversed the district court, in part, holding that the claim, premised upon allegations of inadequate warning systems, was not preempted; the court, however, affirmed the district court's finding that plaintiff's claim of negligence, based upon excessive speed, was preempted by the FRSA. *Easterwood v. CSX Transp., Inc.*, 933 F.2d 1548, 1560 (11th Cir.1991). Upon the filings of petitions for writs of certiorari by both parties, the Supreme Court granted review. *CSX Transp. v. Easterwood*, — U.S. ——, 112 S.Ct. 3024, 120 L.Ed.2d 896 (1992).

The Supreme Court first presented the background of the FRSA and its preemptive effect by noting that the:

FRSA was enacted in 1970 "to promote safety in all areas of railroad operations and to reduce railroad-related accidents, and to reduce deaths and injuries to persons...." 45 USC § 421. To aid in the achievement of these goals, the Act specifically directs the Secretary of Transportation to study and develop solutions to safety problems posed by grade crossings. § 433. In addition, the Secretary is given broad powers to "prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety...." § 431(a). The pre-emptive effect of these regulations is governed by § 434, which contains express saving and preemption clauses. [footnote omitted]. Thus, the States are permitted to "adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement." Even after federal standards have been promulgated, the States may adopt more stringent safety requirements "when necessary to eliminate or reduce an essentially local safety hazard," if those standards are "not incompatible with" federal laws or regulations and not an undue burden on interstate commerce.

*Easterwood,* ——— U.S. at ———, 113 S.Ct. at 1736–37, 123 L.Ed.2d at 395.

With this background, the Court noted that the Secretary of Transportation issued federal regulations which "set maximum allowable operating speeds for all freight and passenger trains for each class of track on which they travel." *Id.,* at ———, 113 S.Ct. at 1742, 123 L.Ed.2d at 402 (citing 49 C.F.R. § 213.9 (1992)). In addition, the Court stated that under the regulations, "different classes of track are in turn defined by, inter alia, their gage, alinement, curvature, surface uniformity, and by the number of crossties per length of track." *Id.* (citing 49 C.F.R. §§ 213.51–213.143 (1992)). In *Easterwood,* the plaintiff conceded that the train was traveling under the maximum speed allowed by the regulations at the railroad crossing in question. *Id.* Nevertheless, she argued that, even though the defendant operated the train at below the speed authorized by federal law, defendant still "breached its common-law duty to operate its train at a moderate and safe rate of speed." *Id.*

The Supreme Court rejected the plaintiff's argument, stating that:

[o]n their face, the provisions of [49 C.F.R.] § 213.9(a) address only the maximum speeds at which trains are permitted to travel given the nature of the track on which they operate. Nevertheless, related safety regulations adopted by the Secretary reveal that the limits were adopted only after the hazards posed by track conditions were taken into account. Understood in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of the sort which [Easterwood] seeks to impose.... Read against this background, [49 C.F.R.] § 213.9(a) should be understood as covering the subject matter of train speed with respect to track conditions, including the conditions posed by grade crossings.

*Id.,* at ——— ———, 113 S.Ct. at 1742–43, 123 L.Ed.2d at 402–03. As such, the Court found that the plaintiff's "excessive speed claim cannot stand in light of the Secretary's adoption of the regulations in [49 C.F.R.] § 213.-9." *Id.,* at ———, 113 S.Ct. at 1743, 123 L.Ed.2d at 404.

■ In the present action, the speed limit, based upon the federal regulations, was twenty-five miles per hour at the railroad crossing. (Cook Aff. at 2). Rail Link has presented the uncontroverted testimony of James Russell Highsmith, the engineer operating the train at the time of the accident, stating that the train was traveling at under fifteen miles per hour at all times prior to the collision with Mark O. Watson. (Highsmith Aff. at 2). The speed of the train was in compliance with the federal regulations and, under the *Easterwood* holding, any common law claim that the train was traveling in excess of a safe rate of speed is preempted by federal law, under the FRSA. Accordingly, summary judgment will be granted to Rail Link on the excessive speed claim.[1]

## III. *Adequacy of Warning Devices and Maintenance of Crossing*

■ In *Easterwood,* the Supreme Court also affirmed the Eleventh Circuit's holding that the plaintiff's claim of negligence, based on the absence of proper warning devices, was not preempted by the FRSA. *Easterwood,* ——— U.S. at ———, 113 S.Ct. at 1736–37, 123 L.Ed.2d at 395. The Court noted that a claim premised on the adequacy of warning devices at a crossing may be preempted in certain circumstances, in particular where federal funds participate in the installation of the warning devices. *Id.,* at ———, 113 S.Ct.

---

1. The Watsons note that in the *Easterwood* appeal to the Eleventh Circuit, the court stated that "[w]hile the plaintiff's claim of negligence based on excessive speed is pre-empted, evidence of speed is relevant to the issue of the adequacy of the warning system." *Easterwood v. CSX Transp., Inc.,* 933 F.2d 1548, 1558 n. 9 (11th Cir.1991). The Watsons, thus, contend that the factor of the speed of the train is relevant to the negligence claim for inadequate warning at the

crossing. This Court finds that the Supreme Court's *Easterwood* holding, which affirmed the court of appeal's opinion, in no way alters this finding of the Eleventh Circuit. Accordingly, the Watsons are correct that the preemption of the excessive speed claim notwithstanding, evidence of the train's speed is relevant to any claim premised upon the adequacy of the warning system at the railroad crossing.

at 1741, 123 L.Ed.2d at 401 ("In short, for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection. The Secretary's regulations therefore cover the subject matter of state law which, like the tort law on which [Easterwood] relies, seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings."). *See* 23 C.F.R. §§ 646.214(b)(3) & (4) (1992). Nevertheless, the Court found that the facts did not show that federal funds participated in the installation of the warning devices at the applicable crossing. The plaintiff's claim was, therefore, not preempted, and she was permitted to pursue her action under applicable state negligence laws.

In the present action, Rail Link presents no argument that the Watsons' inadequate warning and maintenance claim is preempted by federal law. Instead, Rail Link contends that Defendant, ITT, owns the railroad track and the right-of-way where the collision occurred. Rail Link, therefore, claims that it is merely an independent contractor providing switching services for ITT. In addition, Rail Link claims that its duties with regard to the track and crossing are controlled by the Agreement, *see* Pl.'s Mot. for Partial Summ.J. at Ex. B, between Rail Link and ITT which places the responsibility upon ITT to maintain and repair the track on which Rail Link operates. Accordingly, Rail Link argues that it is the exclusive responsibility of ITT to ensure the maintenance of the crossing and the adequacy of the warning devices.

The Agreement upon which Rail Link relies is a contractual relationship entered into between Rail Link and ITT on March 19, 1988. Although it is clear that ITT owns the tracks and the right-of-way where the accident occurred, the Agreement requires Rail Link to provide switching services to ITT.[2]

The Agreement contains the following provision:

> *MAINTENANCE AND REPAIRS.* ITT, shall keep its Tracks clear and passable at all times, and it shall maintain all its tracks and switches in a satisfactory and safe condition. Rail Link shall not operate over any track which fails to meet FRA Class 1 standards; however, in no event shall Rail Link operate over any track which in its opinion is deemed unsafe or unfit for the intended operation. Rail Link shall promptly advise ITT in writing of any track maintenance and repairs which Rail Link believes are necessary to the safe and efficient performance of its services hereunder.

(Pl.'s Mot. for Partial Summ.J. at Ex. B, ¶ 5). Rail Link contends that this provision places the responsibility for repairs and maintenance upon ITT and, therefore, a claim against Rail Link cannot stand.

Rail Link's argument must be rejected. The Agreement does not absolve Rail Link of all responsibility for ensuring the safety of the crossing but, in fact, places responsibility upon Rail Link to not operate on any track that "in its opinion is deemed unsafe or unfit." *Id.* Moreover, Rail Link is given the responsibility to "advise ITT in writing of any track maintenance and repairs which Rail Link believes are necessary to the safe and efficient performance of its services . . . ." *Id.* This Court, therefore, concurs with the Watsons' assertion that the Agreement makes railway crossing safety the responsibility of both Defendants and clearly does not absolve Rail Link of all responsibility. Accordingly, Rail Link's motion for summary judgment will be denied with regard to the negligence claim for inadequate warning and maintenance.

## CONCLUSION

For the foregoing reasons, summary judgment is hereby GRANTED to Rail Link as to the Watsons' excessive speed claim. Sum-

---

**2.** Under the Agreement, "Switching Services" means "the movement and relocation of Rail Cars in order to facilitate loading and unloading of such Rail Cars at the Mill and shall include the provision of all Switching Equipment and Switching Personnel." (Pl.'s Mot. for Partial Summ.J. at Ex. B, ¶ 1.8). The Agreement, therefore, provides for Rail Link to move its trains over ITT's tracks and allow for the movement of raw materials and finished products over ITT's paper mill facilities in Jesup, Georgia.

mary judgment is hereby DENIED to Rail Link as to the Watsons' inadequate warnings and maintenance claim.

**SO ORDERED.**