James EARWOOD and Gail
Earwood, Plaintiffs,

v.

NORFOLK SOUTHERN RAILWAY
COMPANY, Rojerio Garcia, and
Koch Services, Inc., Defendants,

Rojerio GARCIA and Koch Services,
Inc., Cross-claimants,

v.

NORFOLK SOUTHERN RAILWAY
COMPANY, Cross-defendants.

Civ. A. No. 4:93–cv–06–HLM.

United States District Court,
N.D. Georgia,
Rome Division.

Oct. 28, 1993.

Order on Reconsideration Dec. 6, 1993.

Michael J. Warshauer, Burge & Wettermark, Atlanta, GA, for plaintiffs.

Lemuel Hugh Kemp, Bruce Alan Kling, Kinney Kemp Pickell Sponcler & Joiner, Dalton, GA, for Norfolk Southern Ry. Co.

Wade K. Copeland, Webb Carlock Copeland Semler & Stair, Atlanta, GA, Jan Laurence Sadick, Office of J.L. Sadick, Houston, TX, for Rojerio Garcia, Insurance Co. of North America, Koch Services, Inc.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on Defendant/Cross-defendant Norfolk Southern Railway Company's Motion for Partial Summary Judgment and Motion in Limine to Exclude or Motion to Strike.

## BACKGROUND

Plaintiff James Earwood was the conductor on Defendant Norfolk Southern Railway Company's train on January 9, 1991; and was working at his assigned work station, inside the crew cabin of the diesel electric locomotive. The crew strictly complied with the operating directions provided by Defendant. The train collided with a tanker truck, owned by Defendant/Cross-claimant Koch Services, Inc. and driven by Defendant/Cross-claimant Rojerio Garcia, on the public grade crossing at McFarland Road and South Hamilton Street in Dalton, Georgia. Plaintiff was injured in the accident. The tanker truck was badly damaged and the driver was injured.

At that crossing Defendant's tracks were parallel and immediately adjacent to tracks owned by CSX Transportation. CSX cars and locomotives were sitting at the intersection when the collision occurred.

On January 9, 1991 no active warning devices had been installed at this intersection. On December 14, 1990 the Georgia Department of Transportation (DOT) and CSX signed an agreement for the installation of such devices. A similar agreement between the DOT and Defendant was signed on January 25, 1991. The intersection had been studied and prioritized, and planning had begun for active warning device installation. Also some "contracting" for the project had been done. Federal funds paid for personnel time for prioritization, planning and contracting. The installation was completed on November 21, 1991.

Plaintiff James Earwood brought claims against Defendant Norfolk under the Federal Employer's Liability Act (FELA), arguing that his working conditions were unsafe, that Defendant Norfolk knew or should have known of the unsafe conditions and failed to act. This plaintiff brought common law negligence claims against Defendants Koch Services and Garcia. Plaintiff Gail Earwood brought loss of consortium claims against Defendants Koch Services and Garcia. Koch Services and Garcia cross-claimed against Defendant Norfolk alleging inadequate warning and excessive train speed, given the multiple tracks and cars sitting thereon. Defendant argues that all claims to the extent, they assert excessive speed are pre-empted. Defendant also argues that any evidence of speed should be excluded.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The moving party bears the heavy burden of demonstrating that no dispute as to any material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991). This burden is met by "pointing out to the District Court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This initial burden remains with the moving party even when the issue involved is one on which the non-movant will bear the burden of proof at trial. *Russ v. International Paper Co.*, 943 F.2d 589, 592 (5th Cir.1991).

Once the moving party has fulfilled its burden and shown that no factual issues exist which could warrant a trial, the burden shifts to the non-movant to come forward with specific facts showing that a genuine dispute still does exist. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Clark v. Coats & Clark Inc.*, 929 F.2d 604 (11th Cir.1991). This burden shifts back to the non-moving party, however, *only* after the moving party meets its initial burden and shows that no factual issues remain for trial. *Russ*, 943 F.2d at 592. If the moving party does not meet its initial burden, the non-movant is not obligated to put forward additional evidence.

The District Court's duty is to view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *See Bradbury v. Wainwright*, 718 F.2d 1538, 1543 (11th Cir.1983). In deciding a motion for summary judgment, it is not the Court's function to decide issues of genuine material fact. Rather, the Court's function is to determine whether such an issue exists to be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986); *Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983). It is the applicable substantive law which identifies what facts are material. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Facts which in good faith are disputed, but which do not resolve or affect the outcome of the suit will not properly preclude the entry of summary judgment. *Id.* In short, such facts are not material. The materiality of a fact rests solely on the governing substantive law. A district court "can only grant summary judgment 'if everything in the record ... demonstrates that no genuine issue of material fact exists.'" *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir.1986), (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir.1980)).

Genuine disputes are those where the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Moreover, for factual issues to be "genuine" they must have a real basis in the record. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 586, 106 S.Ct. at 1355 (citations omitted.) "[T]his standard mirrors the standard for a directed verdict.... [T]he inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

## DISCUSSION

### I. PARTIAL SUMMARY JUDGMENT

#### A. GAIL EARWOOD

Plaintiff Gail Earwood has alleged no cause of action against the Defendant Norfolk Southern Railway. Contrary to Defendant's "Statement of Material Facts as to Which There is No Dispute," Plaintiff Gail Earwood has *not* "alleged negligence as to

the issue of speed of the train." Plaintiff Gail Earwood has only alleged a loss of consortium claim against Defendants Rojerio Garcia and Koch Services, Inc. The Court concludes that Defendant Norfolk Southern Railway's summary judgment motion is inapplicable to Plaintiff Gail Earwood and denies the motion as to her.

### B. PLAINTIFF JAMES EARWOOD'S FELA CLAIMS

Regulations adopted by the Secretary of Transportation pursuant to the Federal Railroad Safety Act (F.R.S.A.) preempt state common law negligence claims based on general allegations of "excessive speed." *CSX Transportation v. Easterwood,* —— U.S. ——, —— & n. 13, —— & n. 15, 113 S.Ct. 1732, 1742 & n. 13, 1743 & n. 15, 123 L.Ed.2d 387 (1993). However, a negligence action based on a duty to slow or stop a train to avoid a specific, individual hazard is not preempted. 45 U.S.C. § 434; *see Easterwood,* —— U.S. at —— n. 15, 113 S.Ct. at 1743 n. 15; *Missouri Pac. R.R. Co. v. Lemon,* 861 S.W.2d 501, 508 (Tex.Ct.App.1993). The *Easterwood* opinion does not address the effect, if any, of the F.R.S.A. on the Federal Employer's Liability Act (FELA).

As a general rule of statutory construction courts should give effect to all provisions of a statute. *See Connecticut Nat'l Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Absent an intolerable or irreconcilable conflict between two statutes, a court need not decide whether one controls over the other or whether the later one impliedly repeals the earlier one. *See Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 566–67, 107 S.Ct. 1410, 1415–17, 94 L.Ed.2d 563 (1987).

FELA is the exclusive remedy for injured railroad employees. *Wabash R.R. Co. v. Hayes,* 234 U.S. 86, 34 S.Ct. 729, 58 L.Ed. 1226 (1914); *Janelle v. Seaboard*

*Coast Line R.R. Co.,* 524 F.2d 1259, 1261 (5th Cir.1975). FELA is worded broadly and is interpreted even more broadly. *Buell,* 480 U.S. at 561–62, 107 S.Ct. at 1413. A variety of other federal statutes have been held not to preclude claims under FELA. *Buell,* 480 U.S. at 567, 107 S.Ct. at 1416 (FELA claims not precluded by mandatory arbitrability under RLA);[1] *Smolsky v. Consol. R. Corp.,* 780 F.Supp. 283, 286 (E.D.Pa.1991) (FELA claims not precluded by Title VII).

The Defendant, with no analysis of how F.R.S.A. and FELA interact, asserts that *Easterwood* precludes Plaintiff's claims under FELA. Plaintiff argues that FELA is the Plaintiff's exclusive remedy and is intended to be broadly interpreted. Plaintiff argues that F.R.S.A. is not primarily intended to protect employees, thus there is no conflict between the statutes, and therefore both can operate fully.

The Court concludes that Plaintiff's FELA claims are not precluded by F.R.S.A. The two statutes do not purport to cover the same areas. The regulations regarding speed propounded by the Secretary are "minimum safety requirements for railroad track that is part of the general railroad system." 49 C.F.R. § 213.1. Neither the F.R.S.A. nor the regulations purport to define the standard of care with which railroads must act with regard to employees. There is clearly no "intolerable conflict" between the two statutes. The Court holds that Plaintiff may maintain his FELA claims against Defendant, although those claims are in part based upon a claim of the train being operated at an "unsafe speed" given conditions and visibility.

### C. CROSS–CLAIMANTS GARCIA AND KOCH SERVICES, INC.

#### 1. Adequate Warning Claims

Even after *Easterwood* there is a presumption against pre-emption and the

---

1. The F.R.S.A. provides that employees may not be discriminated against for filing complaints or instituting charges against an railroad pursuant to the act. 45 U.S.C. § 441. Employer violations of section 441 are subject to arbitration according to the Railway Labor Act (RLA), 45 U.S.C. § 151 et seq., 45 U.S.C. § 441(c). If the employee is afforded protection by section 441 and some other provision of law, the employee must elect a remedy. 45 U.S.C. § 441(d). The Railway Labor Act provides binding arbitration procedures for certain labor disputes. 45 U.S.C.S. § 151 et. seq.; *Buell,* 480 U.S. at 558, 107 S.Ct. at 1411. However, a railroad employee's claims under FELA are *not* precluded by RLA, even if those claims are subject to arbitration. *Buell,* 480 U.S. at 564–67, 107 S.Ct. at 1414–15.

standards for pre-emption under 45 U.S.C. § 434 are stringent. *CSX Transportation v. Easterwood,* — U.S. ——, —— – ——, 113 S.Ct. 1732, 1739–40, 123 L.Ed.2d 387 (1993). The provisions of 23 C.F.R. pt. 924—providing for state planning, implementation and evaluation of state highway safety programs—do not result in pre-emption of state tort law. *Id.* Part 924 specifically refers to the award of contracts for highway safety improvement programs. 23 C.F.R. § 924.-11(g). Part 924, like part 646, authorizes the use of federal funds for actions taken under that part.

■ The installation of "adequate warning devices" with the participation of federal funds, pursuant to 23 C.F.R. § 646.216, will result in the pre-emption of state tort law. *Easterwood,* — U.S. at —— – ——, 113 S.Ct. at 1740–41. "The costs of preliminary engineering, right of way acquisition, and construction incurred after the date of each phase of the work is included in an approved program and authorized by FHWA are eligible for Federal-aid participation." 23 C.F.R. § 646.216(e)(1). "*Preliminary engineering* shall mean the work necessary to produce construction plans, specifications, and estimates to the degree of completeness required for undertaking construction thereunder, including locating, surveying, designing, and related work." 23 C.F.R. § 646.204(e). "*Construction* shall mean the actual physical construction to improve or eliminate a railroad-highway grade crossing or accomplish other railroad involved work." 23 C.F.R. § 646.204(f).

■ Defendant argues that prior to the Plaintiff's accident federal funds had participated in the *planned* installation of warning devices at the intersection. Defendant argues that federal funds had participated in prioritization, planning and contracting prior to the January 9, 1991 accident, although the signals were not completed until November 21, 1991. Defendant concludes that federal funds sufficiently participated so that Cross-claimants claims are pre-empted. The Cross-claimants, in somewhat conclusory terms, respond that claims with regard to crossing signals are not pre-empted.

The Court holds that the cross-claims, to the extent that they allege inadequate signals, are not preempted. Although the project to install signals at the intersection was underway, it was far from complete. It does not appear that any federal funds had been expended on preliminary engineering or actual construction. In fact the agreement between the State Department of Transportation and one of the two railroads involved was not signed until *after* the accident. The federal funds expended in planning and contracting must have been authorized pursuant to 23 C.F.R. pt. 924, which *Easterwood* specifically held did not pre-empt state tort law. Regardless of the authorization for funds for the prioritization, planning and contracting, those actions do not fall within the actions eligible for federal fund participation under part 646: preliminary engineering, right of way acquisition, and construction.

■ The Court also holds that the cross claims are not pre-empted because the devices were not installed prior to the accident. The facts and holding of *Easterwood* while not dispositive of this case, indicate that pre-emption results from the *installation of the devices* mentioned in 23 C.F.R. § 646.216. In *Easterwood* federal funds had been earmarked for signals at the intersection but later re-allocated, and the intersection listed as a project to be considered later. Furthermore, federal funds were expended to install motion detection circuits necessary for signals at an adjacent intersection. The Court held that these facts were insufficient for pre-emption. Preemption results because the use of federal funds results in a federal mandate of the signalization used and thus the state and railroad are no longer responsible.

However, preemption is *triggered* when the signals are installed, not when the first federal dollar participates. If the participation of the first dollar triggered pre-emption, then the facts of *Easterwood* would require pre-emption because money was actually earmarked, but withdrawn, and actually expended, but not for warning devices. The presence of adequate warning devices and the speed limits protect the public. The devices, not federal funds, provide the pro-

tection. Until the devices themselves are installed the care exercised by the railroads protects the public.

The facts of *Easterwood* provide further justification for applying preemption only when the signals are installed. Pre-emption in *Easterwood* would have been triggered when the funds were earmarked and initial planning begun, and then pre-emption would have been withdrawn when the funds were reallocated. Such a result would create confusion and "gaps" where no entity was responsible for railway crossing safety.

The Court's holding is consistent with the policy underlying part 924 articulated by the Supreme Court. Part 924 operates with state tort law to encourage efficient and timely prioritization for improvement of dangerous intersections. *Easterwood*, — U.S. — at ——, 113 S.Ct. at 1739. Railroads remaining responsible for crossings until devices are installed furthers this policy. The opposite result creates a situation where no devices are present, but railroads are not responsible to act reasonably at crossings without signals.

The Court concludes that the language of 23 C.F.R. § 646.214(b)(3)(i) supports the Courts conclusion. The regulation states that certain devices must be included on "any project where Federal-aid funds participate *in the installation of the devices.*" The installation of the devices is the crucial event. If the use of federal monies was the crucial event, the quoted language could have been drafted to read "any project where Federal-aid funds participate *in any manner* in the installation of the devices." However, under part 646 federal funds may participate in preliminary engineering, right of way acquisition or construction. The Court holds that in this case federal funds had not participated "in the installation of the devices" at the time of the accident, because the warning devices had not been installed; and therefore, state law is not pre-empted.

### b. Speed Claims

Section 205 of the F.R.S.A. provides

A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434. Regulations propounded by the Secretary of Transportation "cover[ ] the subject matter of train speed with respect to track conditions, including the conditions posed by grade crossings." *Easterwood*, — U.S. at ——, 113 S.Ct. at 1743 (citing 23 C.F.R. § 213.9); *see Easterwood*, — U.S. at ——, 113 S.Ct. at 1745 (Thomas, J., concurring in part and dissenting in part) (arguing that Court's broad subject matter holding may create jurisdictional gap where states cannot regulate potentially hazardous operation of trains at speeds below federal limits).

▆▆▆▆ Local hazards to which the second savings clause applies are "unique local conditions," or "specific, individual hazards." *Easterwood*, — U.S. at —— & n. 15, 113 S.Ct. at 1743 & n. 15. General tort law is concerned only with local hazards in the sense that application turns on the facts of each case, and thus does not come within the second savings clause. *Id.* The second savings clause was designed to allow states to respond to local situations, not statewide in character, and which cannot be adequately dealt with by uniform national standards. *National Ass'n of Regulatory Util. Comm'rs v. Coleman*, 542 F.2d 11, 14–15 (3rd Cir. 1976). Conditions such as multiple tracks, and the possibility of cars or locomotives sitting at an intersection are specifically addressed by a national regulation. *See* 23 C.F.R. § 646.214(b)(3)(i).

Defendant Norfolk Southern argues that *Easterwood* precludes any state regulation affecting speed of trains in any manner. Cross-claimants allege that the particular intersection at the time of the accident was congested and visibility was impaired by oth-

er rail cars sitting at the intersection.[2] They argue that the train was traveling too fast for these conditions. Cross-claimants also argue that the claims are not pre-empted because they target a local hazard.

The Court does not agree that *Easterwood* extends as far as Defendant argues. The Court holds, however, that the cross-claims, to the extent that they allege excessive speed, are pre-empted. The Supreme Court's broad holding on the subject matter of the speed regulations precludes the first savings clause of § 434 from saving the cross-claims. The second savings clause of § 434 does not save the cross-claims either. The conditions at the intersection—multiple tracks and rail cars obstructing the view— are not unique local conditions or specific individual hazards. These conditions can and do happen at many intersections in the state, and therefore are not unique to the locality at issue. The Court holds that such conditions are not local hazards within the meaning of the second savings clause.[3] A contrary holding would impair the Secretary of Transportation's authority to pre-empt general state tort law. *See Easterwood,* —— U.S. at ——, 113 S.Ct. at 1743.[4]

The Court notes that the jurisdictional gap which concerned the *Easterwood* dissent does not affect this case. The conditions alleged in the cross-claims are relevant to claims regarding inadequate signals.

## II. MOTION IN LIMINE TO EXCLUDE OR MOTION TO STRIKE

Even if the claims in this case were pre-empted, evidence of speed is still relevant to issues in the case. *See Easterwood v. CSX Transp., Inc.,* 933 F.2d 1548, 1558 n. 9 (11th Cir.1991). While certain state tort law claims are pre-empted, pre-emption does not preclude the admission of evidence. *See*

**2.** Plaintiff's deposition testimony supports these allegations. Defendant has not argued that claims with regard to inadequate signalization of the intersection are pre-empted.

**3.** As noted above, these conditions are addressed by a uniform national regulation.

**4.** *Easterwood* holds: "The state law on which [Plaintiff] relies is concerned with local hazards

*Watson v. Rail Link, Inc.,* 826 F.Supp. 487, 490 n. 1 (S.D.Ga.1993).

Defendant Norfolk Southern Railway has moved to strike references in the pleadings, and exclude evidence, of speed. Plaintiff James Earwood argues that his FELA claims are not pre-empted and evidence of speed is relevant to other issues in the case. Cross-claimants also argue that evidence of speed is relevant to other issues in the case.

The Court holds that evidence of speed is relevant to other issues in the case, such as Plaintiff James Earwood's FELA claims and Defendant Garcia's alleged negligence in pulling out in front of the train. The Court further holds that train speed is relevant to the adequacy of the warnings at the crossing.

## CONCLUSION

Accordingly the Court **DENIES** Defendant Norfolk's Motion for Summary Judgment with regard to Plaintiffs James and Gail Earwood, **DENIES** Defendant's Motion for Summary Judgment on the cross-claims to the extent they are based on inadequate warnings, **GRANTS** Defendant's motion on the cross-claims to the extent they are based on excessive speed, and **DENIES** Defendant's Motion in Limine or Motion to Strike.

IT IS SO ORDERED.

## ORDER ON RECONSIDERATION

This case is before the Court on Defendant Norfolk Southern Railway's Motion for Reconsideration, Motion for Bifurcation, Motion for Severance, and Motion for Interlocutory Appeal Pursuant to 28 U.S.C. 1292(b). For reasons set forth below the Court denies all Defendant's motions. The relevant facts are set forth in the October 28 Order.

only in the sense that its application turns on the facts of each case. The common law of negligence provides a general rule to address all hazards caused by lack of due care, not just those owing to unique local conditions. [Plaintiff]'s contrary view would completely deprive the Secretary of the power to pre-empt state common law, a power clearly conferred by § 434." *Easterwood,* —— U.S. at ——, 113 S.Ct. at 1743.

## MOTION FOR RECONSIDERATION

The Defendant has moved for reconsideration of the Court's determination that the part of the FELA claim based upon unsafe speed is not "preempted," and that the claims based on inadequate signalization are not "preempted."

### SPEED

Defendant urges the Court to reconsider its decision that the FELA claim based in part on speed is preempted because Judge Tidwell in a companion case so ruled. The Court after reviewing Judge Tidwell's order finds no indication that Judge Tidwell decided the same issue. The order does not mention the fact that FELA is federal, not state, law. Judge Tidwell's order cites only *CSX Transp., Inc. v. Easterwood,* ⸻ U.S. at ⸻, 113 S.Ct. at 1743 (1993), which involved no issue of federal law versus federal law.

Defendant gets on the right track in its November 29 Reply brief, wherein it finally acknowledges that FELA is federal law and this case concerns the interaction of two federal laws, not state law and federal law.

The two state cases cited by Defendant are irrelevant to this case. *Claspill v. MoPac,* 793 S.W.2d 139 (Mo.1990), concerns a statutory exclusion of certain records from evidence, which type of records is not at issue in this case. *Central of Ga. v. Lightsey,* 198 Ga.App. 59, 400 S.E.2d 652 (1990) concerns the relationship between OSHA and FELA and holds that FELA overrides OSHA with regard to working conditions on railroads, and that an OSHA violation is not negligence per se for purposes of FELA. The FRSA has issued specific regulations regarding the effect of OSHA regulations.

The Defendant makes a more sophisticated argument. Defendant notes that pursuant to 45 U.S.C. § 437(c), regulations issued pursuant to the Railroad Safety Act have the same force and effect as a statute. Defendant also notes that a violation of a safety statute is negligence per se, relieving a plaintiff of the burden of proving negligence. Defendant then argues that it has "long been settled" that in cases involving the Safety Appliance Act and similar acts that there can be no claims of a duty beyond the specific require-ments of the act. Defendant, however, cites *Baltimore & O.R. Co. v. Groeger,* 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419 (1925) which merely held that a jury cannot find that equipment was unsafe because it did not include the most recent innovations. Defendant argues that if its train was not violating the speed limit then there cannot be a claim based on excessive speed.

 Although the Safety Appliance Act and similar acts are deemed amendments to FELA, FELA did not thereby become a safety statute; FELA remains a tort remedy statute. *McKenna v. Washington Metro. Area Transit Auth.,* 829 F.2d 186, 188 (D.C.Cir.1987) (citing *Lancaster v. Norfolk & W. Ry.,* 773 F.2d 807, 812 (7th Cir.1985), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987)). A violation of one of those acts causing injury to a railroad employee establishes a claim, without the employee additionally having to prove negligence. *Id.* However, violations of the safety acts are not the only methods of establishing negligence claims under FELA. *See Ackley v. Chicago & N.W. Transp. Co.,* 820 F.2d 263, 266 & n. 5 (8th Cir.1987). While compliance with a relevant statute evidences due care, such compliance does not establish due care as matter of law. W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 36, at 233 (5th ed. 1984).

Because the prerequisite to one federal statute overriding another is a finding of "intolerable or irreconcilable" conflict, the Court holds that the Plaintiff may maintain his FELA action although it is based in part on an allegation of unsafe speed. The Court holds that no such conflict exists between FELA and FRSA. Defendant is viewing the issue backward. Had Defendant violated the speed limit, Plaintiff would have been able to establish negligence per se. However, the fact that the Defendant was within the speed limit does not necessarily preclude a finding that Defendant was negligent with regard to the heightened duty under FELA.

The discussion above and the first order address the interaction between two federal statutes—FELA and FRSA. After much consideration the Court concludes that the real issue in this case is a more subtle one:

whether the Secretary's regulations issued pursuant to a *federal statute* abrogate the *federal common law* surrounding FELA. The Court concludes that they do not.

The law governing issues in FELA cases is federal common law. *Southern R. Co. v. Gray,* 241 U.S. 333, 338–39, 36 S.Ct. 558, 560–61, 60 L.Ed. 1030 (1916); *Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 1026, 93 L.Ed. 1282 (1949). "[A]ssuming the premise that maintenance of trade standards negatives negligence, ... negligence within the meaning of the Federal Employers' Liability Act, attached if respondent 'knew, or by the exercise of due care should have known,' that prevalent standards of conduct were inadequate to protect petitioner and similarly situated employees." *Urie,* 337 U.S. at 177–78, 69 S.Ct. at 1028;[1] *see also id.* at 178 n. 16, 69 S.Ct. at 1028 n. 16. FELA's broad and general scope is not to be limited by mere inference or implication. *Id.* at 186, 69 S.Ct. at 1032. The Safety Appliance Acts and the Boiler Inspection Act are amendments to FELA, *expanding* FELA's coverage, by implication from §§ 3 and 4 of FELA. *Id.* at 188, 69 S.Ct. at 1033. However, § 1 of FELA, not §§ 3 and 4, create the employee's cause of action for negligence. *Id.* at 188–89, 69 S.Ct. at 1033–34. The Acts are "supplemental to [FELA], having the purpose and effect of *facilitating* employee recovery, *not of restricting such recovery or making it impossible.*" *Id.* at 189, 69 S.Ct. at 1034; *see also id.* at 190, 69 S.Ct. at 1034.[2]

Regulations issued pursuant to a statute cannot have an effect opposite of congressional intent underlying the statute. *See Santa Fe, Ind., Inc. v. Green,* 430 U.S. 462, 473, 97 S.Ct. 1292, 1300, 51 L.Ed.2d 480 (1977); *Leary v. United States,* 395 U.S. 6, 24, 89 S.Ct. 1532, 1542, 23 L.Ed.2d 57 (1969).

" 'Statutes which invade the common law ... are to be read with a presumption favoring retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.' " *United States v. Texas,* — U.S. —, —, —, 113 S.Ct. 1631, 1634, 1635, 123 L.Ed.2d 245 (1993) (quoting *Isbrandtsen Co. v. Johnson,* 343 U.S. 779, 783, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952)).[3] This presumption applies to federal common law. *Id.*[4] "The question whether a previously available federal common law action has been displaced by federal statutory law involves an assessment of the scope of the legislation and whether the scheme established by Congress addresses the problem formerly governed by federal common law." *Milwaukee v. Illinois,* 451 U.S. 304, 315 n. 8, 101 S.Ct. 1784, 1792 n. 8, 68 L.Ed.2d 114 (1981). This question requires an examination of the purposes underlying the enacted law, i.e. the problems the law was intended to address. *Milwaukee,* 451 U.S. at 314–17, 101 S.Ct. at 1791–93; *United States v. Texas,* — U.S. at —, 113 S.Ct. at 1634 (citing *Milwaukee,* 451 U.S. at 315, 101 S.Ct. at 1791).[5]

---

**1.** Although *Urie* addressed trade standards and not statutory obligations, the Court finds no reason to reach a different result. Adherence to trade standards, like compliance with statutes, is evidence of due care, but within the meaning of negligence under FELA is not dispositive. There is no indication in case law that the federal common law of FELA has abandoned the traditional tort rule regarding statutory compliance.

**2.** This language clearly disposes of Defendant Railway's argument summarized above that the regulations, having the effect of a statute and applied to FELA, mean that compliance with those regulations eliminating an employee's possible claims under FELA.

**3.** The question here addressed differs from issues recently confronting federal courts regarding the development of the federal common law of ERISA and the usefulness of preempted state laws. *See Nachwalter v. Christie,* 805 F.2d 956, 959–60 (11th Cir.1986). The federal common

law of FELA began developing long ago, long before the promulgation of the regulations at issue.

**4.** This rule apparently refines prior Supreme Court pronouncements that no "clear and manifest intent" is required for federal statutory law to abrogate federal common law. *See Milwaukee v. Illinois,* 451 U.S. 304, 316–17, 101 S.Ct. 1784, 1792–93, 68 L.Ed.2d 114 (1981). After *United States v. Texas,* there must an evident "statutory purpose" contrary to the federal common law.

**5.** These considerations differ from considerations in deciding whether federal law preempts state law in these cases. In deciding preemption issues, the questions are not whether the federal statute addresses the problem, and the federal government's purpose in enacting the statute, but merely whether federal statute "covers the subject matter." *Easterwood,* — U.S. at —, 113 S.Ct. at 1743.

■ The Court concludes that a regulation regarding speed promulgated pursuant to 45 U.S.C. § 431 cannot foreclose a railroad employee's FELA claim based on unsafe speed. Contrary to the law surrounding preemption, the court must look at the purpose of the regulation. The Court concludes that the regulations were not directed at the issue of employee safety. While a natural consequence of the regulation may be to improve employee safety, it is not contrary to the evident statutory purpose of the regulation to allow a FELA claim based on unsafe speed. Therefore, the Court must conclude that the FELA claim is not abrogated by the regulation.

Moreover, the regulation itself purports only to establish "minimum safety requirements." 49 C.F.R. § 213.1. Railroad employers are held to more than a mere minimal standard under FELA. *See Kernan v. American Dredging Co.,* 355 U.S. 426, 438–39, 78 S.Ct. 394, 401, 2 L.Ed.2d 382 (1958) ("Instead, the theory of the FELA is that where the employer's conduct falls short of the *high standard* required of him by the Act and his fault, in whole or in part, causes injury, liability ensues.") (emphasis supplied). The Supreme Court clearly stated that the Act under which the regulation was promulgated was not intended to restrict rights of recovery for injured railroad employees. *Urie,* 337 U.S. at 190, 69 S.Ct. at 1034. The Court can find no statement by the Supreme Court supporting a contrary conclusion. Moreover, the Court can find no indication that the federal common law of FELA jettisoned the traditional tort rule that statutory compliance, while evidence of due care, is not dispositive.

## ADEQUATE WARNING SIGNALS

Defendant Railway urges the Court to reconsider its decision regarding preemption of claims regarding the warning signals.[6] Defendant argues that the Court too narrowly construed the regulation's relevant language, "any project where federal funds participate in the installation of the devices," by focusing on the "installation." Defendant argues that "project" and "participate" are the more critical words. Defendant argues that the any federal dollar participation causes preemption and that the triggering event is the decision to install devices. Defendant points the Court to *Hatfield v. Burlington N.R.R. Co.,* 1 F.3d 1071 (10th Cir.1993) and *Towslee v. CSX Transp., Inc.,* No. 90–61, Order (N.D.Ga. Sept. 30, 1991).

Plaintiff again argues that FELA is not preempted by FRSA.. Co-defendants argue that this Court's first order was correct and that the Tenth Circuit case should not change the result.

The Court concludes that its extended analysis in the October 28 Order is correct. It appears that the funds in this case which participated prior to the collision were authorized by 23 C.F.R. pt. 924, which does *not* preempt state law. *Easterwood,* — U.S. at ——, 113 S.Ct. at 1739. The Court concludes that its decision in *Towslee,* to the extent it holds that the *decision* to install devices preempts state law, is wrong, and is superseded by the *Easterwood* decisions. *Easterwood* makes clear that the decision is not what preempts state law, but federal dollar participation in device installation. In *Easterwood,* a decision had been made with regard to the intersection at issue, and then reversed, and no preemption resulted. It is not *any* use of federal dollars that preempts state law. In *Easterwood,* federal dollars were used at the intersection, but not to install the mandated warning devices. The Court's October 28 Order discusses what aspects of installation are eligible for federal dollars participation—"preliminary engineering, right of way acquisition, and construction incurred after the date of each phase of the work is included in an approved program and authorized by FWHA." 23 C.F.R. § 646.-216(e)(1).

The Supreme Court's extended discussion of the regulations reflects that the concern of the Secretary and the Court was public safety. *See Easterwood,* — U.S. at —— - ——, 113 S.Ct. at 1740–43. What protects the public is not the federal dollars or the gov-

6. The intersection had been prioritized for signalization and one railroad owning tracks at the intersection had signed an agreement before the accident. The other railroad involved, signed an agreement after the accident and the devices were not installed until ten months later.

ernmental decision, but the federally mandated devices.

The Court will not follow the Tenth Circuit's decision in *Hatfield*.[7] *Hatfield* is an advisory opinion; the court of appeals remanded the case to district court because there were no facts by which to render a decision. *Hatfield*, 1 F.3d at 1072. The Court does say

Thus, participation may take place when other resources, for example significant personnel time renumerated by federal-aid funds, are utilized at some point in the project. Were it intended that participation be limited to the actual commitment of specific funds to construction only, the language of § 646.214(b)(3) would have been explicit.

. . . . .

If the court finds participation did not occur or did not take place until after [plaintiff's] incident, the court must conclude state law was not preempted.

*Id.* at 1072–73. The Tenth Circuit is correct that § 646.214(b)(3) is not explicit as to what funds "count" for preemption analysis. However, as this Court discussed in its previous order, and mentioned above, § 646.216(e)(1) *does* state which funds "count" for preemption analysis—"preliminary engineering, right of way acquisition, and construction incurred after the date of each phase of the work is included in an approved program and authorized by FWHA." Therefore, the Tenth Circuit may well be just wrong in its analysis in the language quoted above. Furthermore, it is unclear as to whether the Tenth Circuit considered a case such as this where there was a decision to install devices, and then an incident before installation. The *Hatfield* decision in the context of this case shows why federal courts should not issue advisory opinions.

In summary, the Court reaffirms the analysis of the October 28 order.

---

7. The Court located this case while considering the first order. Here the Court explains why the case was not followed or even cited.

## MOTION FOR BIFURCATION

"The court, in furtherance of convenience, or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, . . . or issue, . . ." Fed.R.Civ.P. 42(b).

■ Defendant Railway moves to bifurcate the trial as to damages in Plaintiff Gail Earwood's loss of consortium claim from Plaintiff James Earwood's FELA claim. Defendant argues that trial of the issues together would inject prejudicial and irrelevant evidence into the jury's consideration of the FELA claim and result in the assessment of damages not recoverable under FELA. Defendant cites a Fourth Circuit case in support of its motion. *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440 (4th Cir.1993). Plaintiffs argue that no prejudice will result in this case and the factors of convenience, expeditiousness and judicial economy militate against bifurcation of the trial. Plaintiffs distinguish this case from *Dixon*, arguing that this case does not involve the "kind of gut-wrenching drama necessary for even the most generous jury to get inflamed"—the *Dixon* jury returned verdicts totaling some fifteen million dollars. Plaintiffs also note that the employee plaintiff in *Dixon* had asserted common law claims in addition to FELA claims. Plaintiffs argue that similar evidence will be introduced in both trials, and conclude that bifurcation would result in wasting time and resources with no benefit.

The Court holds that the Defendant Railway will not be prejudiced by a single trial of the issues and claims in this case. The Plaintiffs correctly note that the damages in *Dixon* are qualitatively different from those in this case. The Court also concludes that it appears that similar evidence will be introduced to prove each party's damages, such that separate trials will be merely duplicative. Neither judicial economy nor justice would be served by separate trials.

## MOTION TO SEVER

■ Defendant Railway moves to sever the FELA claim from the common law claims

in this case. Defendant argues that the lower FELA standard of care and the number of claims involved will confuse the jury. Defendant also argues that the Court's ultimate ruling on the preemption issue will result in the admission of prejudicial evidence not otherwise admissible. Plaintiffs argue that Defendant is confusing the rules of evidence with the rules of recovery. Plaintiff James Earwood also argues that severance could prejudice Plaintiff. The FELA claim defendant Railway and the common law claims defendants, in the respective trials could both successfully make the argument that the absent defendant was primarily liable, with the result that Plaintiff recovers nothing. Plaintiffs also argue that Defendant will not be prejudiced. Co-defendants argue that Defendant Railway will not be prejudiced, and that two trials, each with numerous identical lay and expert witnesses, will waste time and resources.

The Court concludes that severance of the FELA and common law claims is unnecessary. Favorable rulings on the preemption defenses does not preclude the evidence of speed and lack of signals from being introduced. *Earwood v. Norfolk S. Ry. Co.,* Order at 16–17, 845 F.Supp. 880 (N.D.Ga.1993); *see Easterwood v. CSX Transp., Inc.,* 933 F.2d 1548, 1558 n. 9 (11th Cir.1991). Defendant Railway will not be prejudiced by a single trial of all issues, and the wasted time and resources militate against separate trials. The Court is confident of its ability to adequately instruct the jury, and the jury's ability to adequately consider the issues. The Court notes that the facts of this case have spawned litigation in at least three courts. The Court finds no reason to hold two (or three) separate trials in one of those courts.

## INTERLOCUTORY APPEAL PURSUANT TO 1292(b)

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing." 28 U.S.C. § 1292(b). "The statute requires an 'order' from the district court that is directly associated with the disposition of at least a claim, if not the entire case itself." *Harris v. Luckey,* 918 F.2d 888, 892 (11th Cir.1990).

An appeal on the issues addressed would not materially advance the termination of this litigation. Plaintiff Gail Earwood has common law claims against the co-defendants, and Plaintiff James Earwood's FELA claim is not entirely based upon speed and inadequate signalization. The Court declines to certify this order for interlocutory appeal.

## CONCLUSION

Accordingly the Court **DENIES** Defendant Railway's Motion for Reconsideration, **DENIES** Defendant's Motion for Bifurcation, **DENIES** Defendant's Motion for Severance, and **DENIES** Defendant's Motion for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b).

IT IS SO ORDERED.