**Robert E. HATFIELD, Plaintiff–Appellee,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, Defendant–Appellant.**

No. 91–3158.

United States Court of Appeals,
Tenth Circuit.

July 30, 1993.

Phillip R. Fields, Wichita, KS, for defendant-appellant.

Timothy J. King and Terry S. Stephens, Stinson, Lasswell & Wilson, Wichita, KS, for plaintiff-appellee.

Before McKAY, Chief Judge, MOORE, Circuit Judge, and ALLEY, District Judge.*

**ORDER ON REMAND**

JOHN P. MOORE, Circuit Judge.

This case is before us after our judgment, previously reported as *Hatfield v. Burlington Northern R. Co.,* 958 F.2d 320 (10th Cir.1992), was vacated by the Supreme Court and remanded for further consideration in light of *CSX Transportation, Inc. v. Easterwood,* 507 U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Having reconsidered, we conclude the case must be remanded for further proceedings.

In the original appeal of this case, we held Kansas law did not apply to a grade crossing collision involving Mr. Hatfield because the adoption of the Manual on Uniform Traffic Control Devices on Streets and Highways by the Secretary of Transportation preempted state regulation of grade crossings. That holding was specifically invalidated in *Easterwood,* 507 U.S. at ——, 113 S.Ct. at 1740.

Nonetheless, the Court did not eschew entirely the concept of preemption. Indeed, it observed:

---

* The Honorable Wayne E. Alley, United States District Court Judge for the Western District of

Oklahoma, sitting by designation.

The remaining potential sources of pre-emption are the provisions of 23 CFR §§ 646.214(b)(3) and (4), which ... do establish requirements as to the installation of particular warning devices. Examination of these regulations demonstrates that, when they are applicable, state tort law is pre-empted....

[A] project for the improvement of a grade crossing must either include an automatic gate or receive FHWA [Federal Highway Administration] approval if federal funds "participate in the installation of the [warning] devices...." In short, for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection. The Secretary's regulations therefore cover the subject matter of state law which ... seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings.

507 U.S. at ——, 113 S.Ct. at 1740–41 (citations omitted).

Thus, the precise issue to be resolved here is whether "federal-aid funds participate[d] in the installation of [a warning] device" prior to the collision involving Mr. Hatfield. The issue requires, first, that we determine the meaning of participation. Thereafter, within the context of that meaning, a factual determination must be made whether participation occurred.

We believe this is the first case to explore the subject. Neither the Supreme Court nor § 646.214(b)(3) has given us a definition with which to work;[1] nonetheless, the Court has shown us a direction to follow. Because, in this case, preemption is dependent upon the injection of federal financial resources into a project, we must assume participation is a significant event. Given the Court's reliance upon a presumption against preemption, *Easterwood,* 507 U.S. at ——, 113 S.Ct. at 1739, logic dictates that more than a casual financial connection between the federal government and the project has to exist before that project is governed and circumscribed by federal regulation. Thus, we conclude the degree of federal participation must be significant.

Does that mean, however, that federal funds be earmarked specifically in a sum certain before participation occurs? We do not believe so. Moreover, there is nothing within either the regulations or in the Court's holding in *Easterwood* that suggests participation occurs only when earmarked dollars are dedicated to installation of warning devices at a particular project. Indeed, the generic significance of the word "funds" suggests a fungibility that covers more than the expenditure of cash on actual construction of a project. Thus, participation may take place when other resources, for example significant personnel time remunerated by federal-aid funds,[2] are utilized at some point in the project. Were it intended that participation be limited to the actual commitment of specific funds to construction only, the language of § 646.214(b)(3) would have been explicit.

At this point, we do not know if, how, or when federal-aid funds were committed to the Haverhill crossing project. Naturally, the parties have taken opposite views of the record and have attempted to answer those questions in a manner most suitable to their own interests. Yet, in fairness, the issue was not significant when the question of preemption was aired in the district court; therefore, no real exploration of the facts has taken place.

Consequently, we must remand the case to the district court for a specific determination if federal-aid funds have participated in the Haverhill project. If so, the court must determine when and how participation occurred. If the court finds participation did

---

1. Indeed, we have found no definitions anywhere within the United States Code or the Code of Federal Regulations. 23 C.F.R. § 646.214(b)(3) states: "[O]n any project where Federal-aid funds participate in the installation of the devices [is] to include automatic gates with flashing light signals...."

2. See, for example, 23 C.F.R. § 1.11(a) which provides for "Federal participation" in the costs of engineering services.

not occur or did not take place until after Mr. Hatfield's incident, the court must conclude state law was not preempted for the purposes of this suit. The case is **REMANDED** for further proceedings.