19 F.3d 547
 28 Fed.R.Serv.3d 433
 Nancy ARMIJO, personal representative of the Estate of Luz
Armijo, Deceased, Plaintiff-Appellant/Cross-Appellee,
v.
ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a Delaware
corporation, Defendant-Appellee/Cross-Appellant.
 Nos. 91-2084, 91-2088.
 United States Court of Appeals,
Tenth Circuit.
 March 22, 1994.
 
 Chris Key, Albuquerque, NM, for plaintiff-appellant/cross-appellee, Nancy Armijo.
 John S. Thal of Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, NM (Timothy C. Holm of Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, NM, with him on the brief), for defendant-appellee/cross-appellant.
 Before SEYMOUR, Chief Judge, and HOLLOWAY and McWILLIAMS, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 The plaintiff-appellant, Nancy Armijo (Armijo), brought this wrongful death diversity action as the personal representative of the estate of her husband, Luz Armijo, against the Atchison, Topeka, and Santa Fe Railway Company (Santa Fe). After a period of discovery, Santa Fe moved for a partial summary judgment on Armijo's claim that Santa Fe negligently failed to provide adequate warnings of the crossing at issue. Santa Fe argued there was preemption of such a state law claim by federal action. The district judge granted partial summary judgment for Santa Fe, upholding its preemption theory. 754 F.Supp. 1526 (1990). In addition, the judge granted a motion in limine by Armijo to exclude all evidence relating to a potential "seat belt defense" by Santa Fe. The judgment embodying both rulings was certified as final under Fed.R.Civ.P. 54(b), and this appeal followed.
 
 
 2
 * Luz Armijo was killed when his car collided with a Santa Fe train at the North Gabaldon Road crossing, north of Belen, New Mexico, on October 23, 1987. Nancy Armijo instituted this wrongful death action in March 1989 against Santa Fe, asserting a claim of negligent failure to provide adequate warnings of the crossing and of negligent operation of its train through the crossing. She also made a claim for punitive damages, alleging that the Santa Fe's conduct in failing to cure the dangerous condition of the crossing was reckless, willful and wanton and in complete disregard of the decedent's safety. As noted, Santa Fe moved for a partial summary judgment on the claim of negligence in not providing adequate warnings, arguing that federal law had preempted such a state common law claim of negligence respecting railroad crossing safety. Armijo filed a motion in limine to exclude all evidence concerning her husband's use or failure to use his seat belt at the time of the accident. She argued that N.M.Stat.Ann. Sec. 66-7-373(B) (Supp.1990) prohibited consideration of failure to use a seat belt in determining apportionment of fault or damages.
 
 
 3
 The district judge granted Santa Fe's motion for a partial summary judgment, upholding its preemption theory. He simultaneously granted Armijo's motion to exclude the seat belt evidence. In a separate judgment, the judge ordered that Santa Fe have judgment "on plaintiff's claims that defendant had a duty to install additional warning devices at the railroad-highway crossing at issue," and declared the judgment as set forth to be a final judgment pursuant to Fed.R.Civ.P. 54(b). The judgment also stated that the court's ruling on seat belt defense would be included in the same Rule 54(b) "final judgment."[1] Appellant's Appendix at 72. Mrs. Armijo timely appealed.
 
 II
 A.
 
 4
 Congress has developed a detailed scheme to address the problem of railroad grade crossing safety. In the Federal Railroad Safety Act of 1970 (FRSA), 84 Stat. 971, 45 U.S.C. Secs. 421-447 (1988 ed. and Supp. II), Congress directed the Secretary of Transportation to study and develop solutions to safety problems posed by grade crossings. 45 U.S.C. Sec. 433. In order to promote national uniformity in rules and regulations relating to railroad safety, Congress gave the Secretary broad powers to "prescribe, as necessary, appropriate rules, regulations, orders and standards for all areas of railroad safety...." Sec. 431(a). Section 434 governs the preemptive effect of those regulations. It permits a state to adopt or continue in force laws, rules, and regulations until the Secretary adopts a rule, regulation, or standard "covering the subject matter of such State requirement." 45 U.S.C. Sec. 434.
 
 
 5
 In the Highway Safety Act of 1973, 87 Stat. 282, 23 U.S.C. Sec. 130, et seq., Congress again addressed railway-highway crossings, providing for the "entire cost of construction of projects for the elimination of hazards of railroad-highway crossings...." Regulations issued under the Highway Safety Act require that states adopt the Federal Highway Administration Manual on Uniform Traffic Control Devices for Streets and Highways (MUTCD) in order to receive federal highway funding. 23 C.F.R. Secs. 655.601, 655.603(b)(1) (1987).
 
 
 6
 Santa Fe argues that these federal regulations and New Mexico's adoption of MUTCD preempted state law concerning the installation of warning devices at railroad crossings. After the argument of this appeal, this court upheld a similar preemption argument, which was premised on the adoption by Kansas of the MUTCD, in Hatfield v. Burlington Northern R. Co., 958 F.2d 320 (10th Cir.1992) (Hatfield I ). Shortly after our opinion in Hatfield I, the Supreme Court granted certiorari in a case that also raised the issue of the extent to which the FRSA preempts state negligence law pertaining to the maintenance of, and the operation of trains at, grade crossings. C.S.X. Transp., Inc. v. Easterwood, --- U.S. ----, 112 S.Ct. 3024, 120 L.Ed.2d 896 (1992). We abated our proceedings in the instant case to await the decision of the Supreme Court in Easterwood.
 
 
 7
 In its Easterwood opinion in April 1993, the Supreme Court determined that the standard for preemption Congress established in Sec. 434 is a relatively strict one: the federal regulation must cover the same subject matter as the state law. C.S.X. Transp., Inc. v. Easterwood, --- U.S. ----, ----, 113 S.Ct. 1732, 1738, 123 L.Ed.2d 387 (1993). Given the strict language of Sec. 434 and the presumption against preemption, the Court held that the general mandates of 23 C.F.R. pt. 924 did not preempt a state law claim that the railroad was negligent in failing to maintain adequate warning devices at a grade crossing. Id. at ---- - ----, 113 S.Ct. at 1739-40. Likewise, the Court held that the requirement that states comply with the MUTCD does not cover the subject matter of the tort law of grade crossings. Id. The MUTCD provides standards for traffic control installation but does not require their installation. MUTCD at 1A-4.
 
 
 8
 The remaining arguable sources of preemption in grade crossing cases are the provisions of 23 C.F.R. Secs. 646.214(b)(2), (3), and (4). These sections, unlike the MUTCD provisions, do establish requirements as to the installation of particular warning devices. When these provisions are applicable, state tort law is preempted. --- U.S. at ---- - ----, 113 S.Ct. at 1740-41. Subsection (b)(2) is only applicable to crossings "located within the limits of or near the terminus of a Federal-aid highway project for construction of a new highway or improvement of an existing roadway." Sec. 646.214(b)(2). For projects in which "federal funds participate in the installation of [warning] devices," regulations specify the type of warning devices that must be installed. As the Supreme Court explained,
 
 
 9
 Thus, States must employ automatic gates with flashing light signals as part of any improvement project that concerns a crossing which features, inter alia, multiple tracks, high speed trains operating in areas of limited visibility, heavy vehicle or train traffic, or if a diagnostic team made up of "representatives of the parties of interest in [the crossing]" recommends them. For federally funded installations at crossings that do not present the track conditions specified in Sec. 646.214(b)(3), "the type of warning device to be installed, whether the determination is made by a State ... agency, and/or the railroad, is subject to the approval of the FHWA." Sec. 646.214(b)(4).
 
 
 10
 Id. at ----, 113 S.Ct. at 1739 (footnote omitted).
 
 
 11
 The Supreme Court held that Secs. 646.214(b)(3) and (4) displace state decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or that federal approval be obtained. Id. at ----, 113 S.Ct. at 1741. "Indeed, Secs. 646.214(b)(3) and (4) effectively set the terms under which railroads are to participate in the improvement of crossings." Id. The Court concluded:
 
 
 12
 In short, for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be used and the means by which railroads are to participate in their selection. The Secretary's regulations therefore cover the subject matter of state law which, like the tort law on which respondent relies, seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings.
 
 
 13
 Id. Under Easterwood, the determinative question in a particular case is whether the preconditions for the application of either regulation have been met, specifically, whether federal funds have participated in the installation of warning devices.[2]
 
 
 14
 Five days after issuing its Easterwood opinion, the Supreme Court vacated our opinion in Hatfield I and remanded the case to us for further consideration in light of Easterwood. --- U.S. ----, 113 S.Ct. 1940, 123 L.Ed.2d 646 (1993). Upon reconsideration, we in turn remanded the case to the district court for a specific determination of whether federal funds participated in the installation of warning devices in the railroad crossing at issue there.
 
 
 15
 If so, the court must determine when and how participation occurred. If the court finds participation did not occur or did not take place until after Mr. Hatfield's incident, the court must conclude state law was not preempted for the purposes of this suit.
 
 
 16
 Hatfield v. Burlington Northern R. Co., 1 F.3d 1071, 1072-73 (10th Cir.1993) (Hatfield II ).
 
 
 17
 In our order on remand, it was necessary for us to determine the precise meaning of participation of funds. Because preemption is premised on the injection of federal funds into a project, we concluded that participation must be a significant event. Id. at 1072. Given the presumption against preemption, "logic dictates that more than a casual financial connection between the federal government and the project has to exist before that project is governed and circumscribed by federal regulations." Id. Thus, the degree of federal participation must be significant. However, because the term "funds" suggests a fungibility that covers more than the expenditure of cash, federal participation may consist of other resources, such as significant personnel time remunerated by federal funds. Id.B.
 
 
 18
 In her memorandum to us addressing the effect of Easterwood, Armijo argues that Easterwood mandates reversal of the district judge's preemption ruling and remand for reinstatement of this case on the trial docket. She says that preemption in these circumstances occurs only when federal funds participate in the installation of the devices, under the teaching of Easterwood. Appellant's Supplemental Memorandum at 6. She argues that at the time of the accident in October 1987, not only had no construction been done, but the state agency had not yet requested the preliminary data necessary for an application for federal funding of the project. Id. at 6-7. Since no federal funding had been approved and no federal funds had been expended at the time of the accident in question, federal funds did not "participate in the installation of [needed warning] devices," and no federal preemption occurred. Id. at 7.
 
 
 19
 On the other hand, Santa Fe argues that Easterwood mandates a holding that preemption occurred when there was federal participation in the decision to upgrade warning devices at the railroad crossing pursuant to 23 C.F.R. Sec. 646.214. Appellee's Supplemental Memorandum at 3. Santa Fe points out that a diagnostic team had recommended that the North Gabaldon crossing be included in the state program for federally funded railroad crossing improvements and that it be upgraded by installation of "flashers and gates." Appellee's Supplemental Memorandum at 5 (citing Appellee's Supplemental Appendix at 50, 53). Santa Fe urges us to conclude that the recommendation of the diagnostic team makes Sec. 646.214(b)(3) applicable and that therefore state tort law was preempted.
 
 
 20
 We are not persuaded by Santa Fe's arguments. We have been instructed that there is a "presumption against preemption," and that preemption will not lie unless it is the "clear and manifest purpose of Congress." Easterwood, --- U.S. at ----, 113 S.Ct. at 1737 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Under 23 C.F.R. Sec. 646.214 and Easterwood, preemption does not occur until "federal funds participate in the installation of warning devices." --- U.S. at ----, 113 S.Ct. at 1741.
 
 
 21
 Based on the undisputed facts developed in the record, including the affidavits and depositions of critical witnesses, as of July 1984 the State had assigned the North Gabaldon crossing a priority rank of 14 out of 22 crossings contained in its five-year plan for crossing improvement projects. However, this is not the critical event for preemption. It was not until early November 1987, shortly after Mr. Armijo's accident on October 23, that the State requested that Santa Fe prepare design and cost estimates for the Gabaldon crossing. San Miguel Affidavit, Appellant's Appendix at 46. As the district judge noted, as of the time of the accident the State of New Mexico had not even requested a preliminary engineering report concerning upgrading the warning devices at the North Gabaldon Road crossing. 754 F.Supp. at 1529-30. Moreover, approval of the project by the Federal Highway Administration, a necessary precondition for federal funding, Sec. 646.216(e), was not received by the State until November 18, 1988, more than a year after the accident. Appellant's Appendix at 32. Therefore, the record is clear that as of October 23, 1987, the preconditions for the application of Secs. 646.214(b)(3) and (4) were not met, and we must conclude that Mrs. Armijo's negligence claim is not preempted.
 
 
 22
 Accordingly, we are convinced that on the undisputed record before us, this case need not be remanded for further determinations on the preemption issue as was done in Hatfield. On the contrary, we are persuaded that there is no evidence that the events necessary for preemption occurred before the accident on October 23, 1987. Due to the error below on the preemption ruling, the order of partial summary judgment for Santa Fe must be reversed and the state law negligence issue remanded for further proceedings. See Lusby v. Union Pacific R. Co., 4 F.3d 639, 642-43 (8th Cir.1993).
 
 III
 
 23
 We must also consider Santa Fe's cross-appeal of the district judge's ruling regarding the seat belt defense. As noted, the judge granted Armijo's motion in limine to exclude any evidence, argument or inference to be adduced by Santa Fe on the alleged failure of the decedent to use a seat belt. This ruling was included in the final judgment entered with the Rule 54(b) finding for appeal. We hold, however, that an appeal from the seat belt ruling does not lie at this time.
 
 
 24
 Rule 54(b) allows a court to "direct the entry of a final judgment as to one or more but fewer than all claims." This may be done only where the district court first determines that the judgment is final. Curtiss-Wright Corp. v. General Elect. Co., 446 U.S. 1, 7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980); Wheeler Machinery v. Mountain States Mineral Enters., Inc., 696 F.2d 787, 789 (10th Cir.1983). "[The judgment] must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.' " Curtiss-Wright, 446 U.S. at 7, 100 S.Ct. at 1464 (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956)); see also McKibben v. Chubb, 840 F.2d 1525, 1528 (10th Cir.1988).
 
 
 25
 The district court's finding of preemption clearly involved a dispositive ruling on Mrs. Armijo's state law claim of negligent failure to provide adequate warnings of the crossing. However, the ruling on the motion in limine did not resolve a claim; it merely rejected evidence of one defense to the negligence claims of Armijo. The district court's inclusion of that separate ruling in the judgment entered under Rule 54(b) does not alter the fundamental character of that ruling on the seat belt evidence. See Sears, Roebuck, 351 U.S. at 437, 76 S.Ct. at 900 ("The District Court cannot, in the exercise of its discretion, treat as 'final' that which is not final within the meaning of [28 U.S.C.] Sec. 1291.") (emphasis in original). The ruling on the motion in limine rejecting evidence pertaining to a defense cannot be considered as appropriate for an appeal under Rule 54(b). In accordance with our duty to inquire into our jurisdiction, see McGeorge v. Continental Airlines, Inc., 871 F.2d 952, 953 (10th Cir.1989), we hold that we do not have appellate jurisdiction of the cross-appeal under 28 U.S.C. Sec. 1291 to review the district court's ruling on the motion in limine.
 
 IV
 
 26
 Accordingly, in No. 91-2084, the partial summary judgment of the district court for Santa Fe is REVERSED. In No. 91-2088, Santa Fe's cross-appeal is DISMISSED for lack of appellate jurisdiction of the issues raised therein. The case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 In addition, the trial judge stated in the judgment that his denial of the plaintiff's motion to amend the pretrial order and assert additional negligence theories was included in that same Rule 54(b) order. However, that issue is not argued in this appeal
 
 
 [2]
 At our request, the parties in the instant case filed memoranda addressing the effect of Easterwood on their appeals. We have considered those memoranda in connection with the argument and briefing before us