Robert E. HATFIELD, Plaintiff–
Appellant,

v.

BURLINGTON NORTHERN RAILROAD
COMPANY, Defendant–Appellee.

No. 94–3160.

United States Court of Appeals,
Tenth Circuit.

Aug. 29, 1995.

Timothy J. King of Speth, King & Riedmiller, Wichita, KS, for plaintiff-appellant.

Phillip R. Fields, Wichita, KS, for defendant-appellee.

Before EBEL and KELLY, Circuit Judges, and BRATTON, District Judge.*

EBEL, Circuit Judge.

This is an interlocutory appeal of a decision by the United States District Court for the District of Kansas granting partial summary judgment to the Defendant railroad, based on federal preemption of the railroad's duty to provide safe road crossings under Kansas common law. We exercise jurisdiction pursuant to 28 U.S.C. § 1292(b) and affirm the decision of the district court.

## I. BACKGROUND

On September 29, 1987, a truck driven by Plaintiff Robert E. Hatfield ("Hatfield"), collided with Defendant Burlington Northern Railroad's ("Burlington") train at the Haverhill Road crossing in Butler County, Kansas. Hatfield brought this action against Burlington alleging, *inter alia,* that Burlington was negligent in failing to install active warning devices at the crossing. Burlington contended that Hatfield's state law negligence claim based on a failure to provide active warning devices was preempted by the Federal Railroad Safety Act ("FRSA"), 45 U.S.C. § 434, and by regulations promulgated thereunder in the Manual on Uniform Traffic Control

---

* The Honorable Howard C. Bratton, Senior United States District Judge for the District of New Mexico, sitting by designation.

Devices for Streets and Highways ("MUTCD"), 23 C.F.R. § 655.601 *et seq.*

The relevant chronological events were as follows:

5/1/72 Kansas Department of Transportation ("KDOT") first inventoried the Haverhill Road crossing;

7/23/81 KDOT conducted an on-site inspection of the crossing, but did not recommend any improvements;

2/84 KDOT updated its information on the crossing and placed it on the improvement list for fiscal year 1985;

1/8/85 Federal Highway Administration ("FHA") authorized preliminary engineering on the Haverhill Road crossing project, including the complete design and drawing of plans for the installation of active traffic control devices, and further advised that up to $1,800 (or 90% of the estimated preliminary engineering costs) had been obligated for such preliminary engineering;

5/1/85 KDOT conducted an on-site inspection of the crossing, including preliminary engineering (at a federally reimbursable cost of $619.17), and, as a result of that inspection, scheduled the crossing for improvements;

9/29/87 Accident occurred;

12/11/87 Butler County officials sent a letter to KDOT agreeing to participate in the installation of signals at the crossing;

12/28/87 KDOT approved a project to install signals at the crossing, and supplied the railroad with copies of an agreement and plans to install such signals;

3/2/88 Funds were obligated by the federal government;

3/11/88 KDOT authorized Burlington to order the materials necessary for the signals—but cautioned against installation until agreements were complete;

3/14/88 Funds were approved by the Federal Highway Administration;

3/21/88 KDOT authorized Burlington to begin work on installation of the signals at the crossing;

3/22/89 KDOT issued a notice of acceptance of the improvement;

3/91 Final federal payment for project of $31,169 was made, including preliminary engineering ($619.17), construction engineering ($611.15), and construction ($29,-938.68).

In *Hatfield v. Burlington N. R.R. Co.*, 757 F.Supp. 1198 (D.Kan.1991) ("*Hatfield I*"), the district court acknowledged that the FRSA could preempt state negligence law, *id.* at 1201, but held that federal preemption would not occur on a project until there was an agreement as to the "type of warning device to be installed" as a federally reimbursable crossing improvement, *id.* at 1207–08. The district court held that such an agreement did not occur until, at the earliest, December 28, 1987, when the KDOT formally approved the project. *Id.* Thus, Hatfield's negligence claim, based on the events of September 29, 1987, was held not to be preempted by the FRSA. *Id.* Burlington appealed that decision as an interlocutory appeal under 28 U.S.C. § 1292(b).

In *Hatfield v. Burlington N. R.R. Co.*, 958 F.2d 320 (10th Cir.1992) ("*Hatfield II*"), we reversed the district court, holding that preemption was not to be applied selectively on a case by case basis, but instead absolved all railroads of complying with duties imposed by state law as to safety devices at crossings as of the adoption of the MUTCD in 1983. Hatfield petitioned for certiorari, and the Court retained the case to be considered in conjunction with another case pending before the Supreme Court, *CSX Transp., Inc. v. Easterwood.*

In *CSX Transp., Inc. v. Easterwood*, —— U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), the Supreme Court held that the promulgation of the MUTCD, by itself, did not give rise to preemption. *Id.* at —— – ——, 113 S.Ct. at 1739–40. Instead, the Court held that preemption is predicated on 23 C.F.R. §§ 646.214(b)(3) and (4), and is based on participation of federal resources in the installation of the warning devices. *Id.* at —— – ——, 113 S.Ct. at 1740–41. The Court then vacated our decision in *Hatfield II*, and remanded the case for further consideration in view of its decision in *Easterwood. Hatfield v. Burlington N. R.R. Co.*, —— U.S.

——, 113 S.Ct. 1940, 123 L.Ed.2d 646 (1993) ("*Hatfield III*").

On remand, in *Hatfield v. Burlington N. R.R. Co.*, 1 F.3d 1071 (10th Cir.1993) ("*Hatfield IV*"), we applied the Supreme Court's decision to the case before us and held that once a crossing becomes a project for federally reimbursable improvement and federal resources "significantly" participate in the project, then, as of that moment, state negligence law is preempted regarding the issue of the safety of the crossing control devices. *Id.* at 1072. We held that significant federal participation did not necessarily require the expenditure of money, but could also involve the expenditure of other federal resources such as time and expertise. *Id.* Because we found that a factual question remained as to whether and when the federal government participated significantly in the Haverhill Road crossing project, we remanded the case to the district court for this specific determination. *Id.* at 1072–73.

The district court reviewed the factual evidence submitted by the parties and granted summary judgment to Burlington, finding preemption as of January 8, 1985, when the federal government committed up to $1,800 in engineering assistance for preliminary engineering for the project. *Hatfield v. Burlington N. R.R. Co.*, 848 F.Supp. 158, 158–59 (D.Kan.1994) ("*Hatfield V*"). Because this predated the accident, Hatfield's state negligence claim was held to have been preempted by federal law. *Id.* Hatfield appealed, and the case is before us again on an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## II. DISCUSSION

 The narrow issue before us in this case is whether the district court properly applied the substantive law of *Easterwood* and *Hatfield IV* in deciding that there was significant federal participation in the installation of active warning devices at the Haverhill Road crossing prior to Hatfield's accident so as to preempt Burlington's common law duty to Hatfield to maintain the crossing. It is undisputed that federal funds were committed to preliminary engineering and that this engineering was completed prior to Hatfield's accident. It is also undisputed that federal funds were not committed to actual construction of the warning devices until after the accident. Thus, the question is whether the commitment of federal resources for, and completion of, preliminary engineering constitutes significant federal participation so as to bring about preemption of state law.[1]

In *Hatfield IV*, we stated that "significant" federal participation requires "more than a casual financial connection" between the federal government and the project. 1 F.3d at 1072. However, we also made it clear that federal financial participation may include utilization of non-cash resources, such as federally funded personnel resources, and that federal participation may occur at any point in the project, including the planning stage. *Id.* Thus, we must look at the Haverhill Road crossing project broadly—from its planning inception to its construction completion—in determining when significant federal participation first occurred.

In early 1985, after the FHA authorized $1,800 for preliminary engineering, KDOT conducted an on-site inspection, including preliminary engineering, at a cost of $619.17 in federal funds, and scheduled the crossing for installation of federally funded active warning devices. This process involved federal personnel resources and the selection of federally mandated active warning devices pursuant to 23 C.F.R. § 646.214(b)(3). All of

---

1. We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court pursuant to Fed. R.Civ.P. 56(c). *Universal Money Ctrs., Inc. v. AT & T*, 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994); *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Universal*, 22 F.3d at 1529 (quoting Fed.R.Civ.P. 56(c)). If there is no genuine issue of material fact in dispute, then we next determine if the district court correctly applied the substantive law. *Applied Genetics*, 912 F.2d at 1241.

these events occurred prior to Hatfield's accident.

Hatfield argues that $619.17 is not significant when compared with the overall cost of the project, $31,169. However, we do not believe that proportionality to overall costs is the sole touch-stone in determining the significance of a federal financial commitment. Instead, we believe that the financial commitment must be such that it shows a clear federal intent to require a federally approved warning device at the crossing in question, backed up by the actual expenditure of federal resources of more than a casual or de minimis nature, and specifically directed toward the ultimate installation of the improved warning devices at that crossing. The government participation was significant by that standard. The expenditure of $619.19 in government funds is more than de minimis or insignificant. Furthermore, the government made a clear commitment to a project to upgrade this particular crossing with a federally approved crossing device—a project to which Burlington was expressly excused from contributing funds. *See* 23 C.F.R. § 646.210(b)(1); *Easterwood*, —— U.S. at ——, 113 S.Ct. at 1741.

At that point in time—when the government committed to preliminary engineering—both the financing of the improvement project and its direction and control were removed from Burlington. The federal government had expended significant resources and control of the project had passed to state or local authorities. Therefore, this seems to be the appropriate moment to declare that railroad liability under state law for the adequacy of the traffic control devices at the crossing should be preempted.

Hatfield argues that *Easterwood* impliedly held that preliminary engineering does not trigger preemption because the FRSA funded project in *Easterwood* was arguably further along than the one before us. In *Easterwood*, the federal government had set aside funds for actual construction of the project, but later reallocated the funds to another project because the city failed to perform needed alterations to the roadway involved. *Easterwood*, —— U.S. at ——–——, 113 S.Ct. at 1741–42. Nevertheless, the Su-

preme Court held that the railroad's duty was not preempted because the project was terminated, and the planned active warning devices were never actually installed. *Id.* In *Easterwood*, the government expended funds at the intersection in question for motion detector devices; however, this equipment was installed as part of the improvement of an adjacent intersection, and the federal expenditure was attributed to that adjacent intersection. Even though the motion detectors could have been used by crossing devices at either intersection, they were not installed as part of a project to improve the intersection in question. Thus, in *Easterwood*, there were no federal funds expended explicitly for the crossing in question, either for planning or installation. Thus, *Easterwood* is simply a case where no expenditure of federal resources had ever occurred on the crossing in question and, hence, preemption never occurred.

For the foregoing reasons, we conclude that FRSA preemption takes place when the federal government (1) commits itself, through a significant event or events, to a project to install active warning devices, and (2) expends significant federal resources on such a project. In the case of the Haverhill Road crossing, the federal government committed itself to the installation of active warning devices through the authorization of preliminary engineering and the subsequent selection of active warning devices for the crossing. We believe these events were sufficiently significant to constitute a federal commitment to install active warning devices at the crossing. The federal government expended $619.17, as well as federal personnel resources on the project. We believe this constitutes significant federal resources. The project was ultimately completed with the installation of active warning devices at the Haverhill Road Crossing. Accordingly, we hold that Burlington's common law duty to Hatfield to maintain the Haverhill Road crossing was preempted by the FRSA at the time of the accident in question.

## III. CONCLUSION

We AFFIRM the decision of the district court dismissing Hatfield's common law tort

claim against Burlington, for failure to provide a safe crossing, as preempted by the FRSA.