**Rashool BASHIR, as Personal Representative for the Estate of Warith Dean Bashir, Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK), a District of Columbia corporation, and CSX Transportation, Inc., a Virginia corporation, Defendants.**

**No. 95–6171–CIV.**

United States District Court, S.D. Florida.

March 25, 1996.

Joseph J. Slama, Fort Lauderdale, FL, for plaintiff.

Bradley S. Fischer, Fort Lauderdale, FL, for defendants.

Darryl Lewis, Fort Lauderdale, FL.

## *OMNIBUS ORDER*

NESBITT, District Judge.

This cause comes before the Court upon Defendants' Motion for Summary Judgment, filed August 4, 1995 (DE # 16), Plaintiff's Motion to Strike Offers of Judgment, filed August 23, 1995 (DE # 28), its Motion to Strike Pleadings Based on Spoliation of Evidence, filed November 7, 1995 (DE # 41), its Motion for Omnibus Hearing, filed on the same date (DE # 42), and its Motion to Reconsider and Revise Order, filed February 2, 1996 (DE # 64).

### BACKGROUND

On February 28, 1994 at around 7:00 PM, Rashool Bashir and his younger brother were walking home when they observed the crossing gates closed and the lights flashing at the Interlachen Parkway railroad crossing in Lakeland, Florida (the "Interlachen Crossing"). Believing that they could cross the tracks before the approaching train arrived, the boys dashed off. Rashool made it across the tracks, but his brother did not. Warith Dean Bashir (the "Decedent") was struck and killed at approximately 7:02 PM.

Plaintiff filed this wrongful death action on January 24, 1995 in Florida Circuit Court, alleging that Defendants National Railroad Passenger Corporation ("Amtrak"), the owner and operator of the train, and CSX Transportation, Inc. ("CSX"), the owner of the tracks (collectively, "Defendants"), were negligent in failing to install and maintain adequate warning systems at the Crossing and failing to stop the train before striking the Decedent. Defendants removed the action to this Court on February 22, 1995, alleging jurisdiction under 28 U.S.C. §§ 1331 and 1349 in that Amtrak is a federally-owned corporation. Defendants now move for summary judgment on the grounds that all claims are barred as preempted by applicable federal law. Plaintiff, in turn, moves to strike certain of Defendants' pleadings on the grounds of spoliation of evidence.

The Court heard oral argument on the motions at the pretrial conference on January 8, 1996. On January 10, 1996, the Court entered and order granting Plaintiff's request to depose Don Scott, an Amtrak employee, and to supplement its response to the motion for summary judgment with information learned in the deposition. Plaintiff has conducted the deposition and submitted its supplemental response to the motion for summary judgment, and, in accordance with the Court's order, Defendants have responded to Plaintiff's supplemental response.

### DISCUSSION

### A. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The movant bears the initial burden of informing the Court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In response to a properly supported motion for summary judgment, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts which show a genuine issue for trial." FED.R.CIV.P. 56(e). If the non-moving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the Court must enter summary judgment for the moving party. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. The Court is not to resolve factual issues, but may only determine whether factual issues exist. The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

#### 1. *Waiver*

In response to the motion for summary judgment, Plaintiff first contends that Defendants have waived the defense of preemption because they failed to raise it as an affirmative defense in their answer. Plaintiff contends that preemption is an affirmative defense that cannot be raised for the first time

in a motion for summary judgment as Defendants have done. Defendants, on the other hand, argue that because preemption constitutes a denial of liability, rather than an avoidance, it is not an affirmative defense and need not be raised in the answer.

█ The Court need not resolve this conflict, however, as it finds that the reason for requiring defendants to raise affirmative defenses in the answer—notice to the plaintiff—counsels in favor of permitting Defendants to proceed with their preemption defense. *Kennan v. Dow Chemical Co.*, 717 F.Supp. 799, 808–10 (M.D.Fla.1989) (if party can show that no prejudice results from its failure to raise affirmative defense in its answer it should be allowed to amend answer and assert defense); *In re Air Crash Disaster at Stapleton Intern.*, 721 F.Supp. 1185, 1186 (D.Colo.1988). Plaintiff has suffered no prejudice from Defendants' failure to raise preemption in the first instance. Plaintiff had notice of Defendants' intent to raise preemption as a defense, at the latest, when Defendants filed their motion for summary judgment on August 4, 1995. This was a full five months before the pretrial conference during which time Plaintiff has had an adequate opportunity to conduct discovery and prepare a response to Defendants' motion. Accordingly, the Court will allow Defendants' to amend their answer to include the defense of preemption. *See Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1404–05 (11th Cir.1994) (granting leave to amend answer to include defense of preemption at summary judgment stage where plaintiff suffered no prejudice), *cert. denied*, —— U.S. ——, 115 S.Ct. 906, 130 L.Ed.2d 788 (1995).

### 2. *Inadequate Warning Device Claims*

█ Defendants contend, and the Court agrees, that the Federal Railroad Safety Act of 1970 ("FRSA"), 45 U.S.C. §§ 421–447, preempts Plaintiff's inadequate warning device claims. The Supreme Court's decision in *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), speaks directly to this issue. There, the Court concluded that 23 CFR §§ 646.214(b)(3) and (4), regulations promul-

gated pursuant to FRSA and the Highway Safety Act of 1973, 23 U.S.C. § 130, grant to the Secretary of Transportation sole authority over warning devices for grade crossings in which federal funds "participate in the installation of the [warning] devices." *Id.* at 670, 113 S.Ct. at 1741. Accordingly, state laws purporting to impose additional duties on railroads regarding warning devices are preempted:

> In short, for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection. The Secretary's regulations therefore cover the subject matter of state law, which, like the tort law on which respondent relies, seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings.

*Id.* Here, the state tort law on which Plaintiff relies also conflicts with §§ 646.214(b)(3) and (4) and is therefore preempted if federal funds participated in the installation of warning devices at the Interlachen Crossing. Plaintiff's contention that state law is not preempted because the applicable federal law does not address warning devices on pedestrian crossings is unconvincing. Neither §§ 646.214(b)(3) and (4) nor the *Easterwood* decision distinguish between vehicular and pedestrian crossings. They speak only of warning devices at "grade crossings," and Plaintiff has provided no reason to conclude that that term does not include crossings for pedestrians as well as vehicles.

Defendants have presented documents from the Florida Department of Transportation and affidavits of two of its employees indicating that warning devices, including automatic gates, were installed at the Interlachen Crossing in 1978 pursuant to federal mandate and that federal funds participated in the installation. *See* Affidavit of T. Brooks, at ¶ 7–12; Affidavit of L. Kelley, at ¶ 4 (stating that Federal Highway Administration paid $31,536 toward warning devices installed at Interlachen Crossing, which constituted 90% of the amount paid for such devices). Plaintiff does not dispute that the warning devices were installed pursuant to

federal mandate, nor that federal funds participated; instead, Plaintiff claims that there is an issue of fact as to the precise percentage of federal participation.

■ While Plaintiff may be correct, the precise percentage of federal participation is, in this case, immaterial to the issue of preemption. Preemption applies where the amount of federal participation in the installation of warning devices is significant, regardless of the actual percentage federal funds comprise of the whole. *See Hatfield v. Burlington Northern R. Co.*, 64 F.3d 559, 562 (10th Cir.1995). *But see, Hester v. CSX Transp., Inc.*, 61 F.3d 382, 386–7 (5th Cir. 1995) (holding that state law is preempted where federal funds merely participate, regardless of whether that participation is significant), *cert. denied*, —— U.S. ——, 116 S.Ct. 815, 133 L.Ed.2d 760 (1996). Plaintiff has provided no evidence to dispute $31,536 as the amount the federal government devoted to warning devices at the Interlachen Crossing. Whether that amount constituted 99% of the total amount paid on the warning devices, as Defendants claim, or 79%, as Plaintiff claims, it was clearly significant, which is all that matters. *See, Hatfield*, 64 F.3d at 562 (holding that $619.17 in federal funds out of a total cost of $31,169 constitutes significant participation). Accordingly, Plaintiff's inadequate warning device claims are preempted.

### 3. *Excessive Speed Claims*

■ *Easterwood* is equally instructive on Plaintiff's excessive speed claims.[1] In *Easterwood*, the Court held that, like the regulations governing warning devices at grade crossings, the federal regulation setting maximum operating speeds, 49 CFR § 213.9(a), also covers the applicable subject matter and therefore preempts conflicting state laws. 507 U.S. at 672–76, 113 S.Ct. at 1742–43. Accordingly, § 213.9(a), which sets

a maximum speed of eighty miles per hour for trains traveling through the Interlachen Crossing, preempts state tort laws to the extent they impose contrary maximum speeds on such trains. Plaintiff's excessive speed claims are therefore preempted unless the evidence demonstrates that the train was traveling in excess of eighty miles per hour when it struck Decedent. It is Plaintiff's burden to uncover this evidence and present it to the Court. Excessive speed is the sine qua non of an excessive speed claim, and the burden of proving this element, as with any essential element of a claim, rests with the plaintiff.

■ On issues as to which the plaintiff bears the burden of proof at trial, the Eleventh Circuit has stated the defendant's initial burden on summary judgment as follows:

> the [defendant] is not required to support its motion with affidavits or other similar material negating the [plaintiff's] claim in order to discharge [it's] initial [burden]. Instead, the [defendant] simply may show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the [plaintiff's] case. Alternatively, the [defendant] may support its motion for summary judgment with affirmative evidence demonstrating that the [plaintiff] will be unable to prove its case at trial.

*U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir.1991) (*en banc*); *see also, Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993) (summarizing burdens on summary judgment). Where, as here, the defendant discharges its initial burden in the latter manner—by offering affirmative evidence that negates an essential element of the plaintiff's claim—the plaintiff must respond with evidence sufficient to withstand a motion for directed verdict on that element.[2] *Id.* at 1116.

---

1. Although Plaintiff's Complaint does not include claims expressly stating that Defendants operated the train at an excessive speed, it does contain claims for negligence based on Defendants' failure to stop the train before striking the Decedent. Both parties have treated these claims as though they include claims of excessive speed. Accordingly, the Court will treat each of the claims as

including two separate claims: excessive speed and negligent failure to stop the train.

2. Under Federal Rule of Civil Procedure 50(a), a District Court must direct a verdict "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–251, 106 S.Ct.

Here, Defendants discharged their initial burden by offering evidence to negate Plaintiff's claim that the train exceeded eighty miles per hour. Defendants offer the testimony of the train's engineer, assistant engineer, and conductor, each of whom stated that the train was traveling at seventy miles per hour. The engineer, Richard Mascio, who has over twenty years experience, indicated in his deposition that he was paying close attention to the train's speed as it approached the Interlachen Crossing. Mascio Deposition at 62–68. He stated that the speedometer is eight inches in diameter, illuminated, and conveniently located in the engineer's field of vision while he is looking out the windshield of the train. *Id.* at 44, 63. At the moment the train struck the Decedent, Mascio, whose eyes were fixed on the track in front of the train, glanced up at the speedometer and applied the brakes in one reflexive action. *Id.* at 88–89; Mascio Affidavit at ¶ 3. The speedometer indicated that the train was traveling at seventy miles per hour. *Id.* Leonard Cooke, the assistant engineer, corroborated this testimony. Cooke also looked at the speedometer at the moment of impact and also noted that the train's speed was seventy miles per hour. Cooke Affidavit at ¶ 3. Immediately following the accident, both Cooke and Mascio reported the train's speed as seventy miles per hour to Police Officer Timothy Vickers, who included the speed in his report. *See* Exhibit "A" to Defendants' Motion for Summary Judgment. Later, upon the train's arrival at its final destination, Cooke and Mascio reported this speed again, this time to Charles Fowler, the train's conductor, for Fowler's Unusual Occurrence Report. *See* Exhibit "A" to Fowler Affidavit; Fowler Deposition at 30–33.

Plaintiff offers no evidence to rebut Defendant's evidence of the train's speed.[3] Instead, Plaintiff contends that an issue of fact exists because Amtrak did not preserve the speed recorder tape, which continuously records the speed of a train during its operation. Plaintiff is incorrect. The statements of Mascio and Cooke are perfectly valid evidence of speed. It is immaterial whether other evidence may have been available if there is no reason to doubt the evidence Defendants have offered. Plaintiff's burden is to rebut the evidence Defendant *has* offered, not simply to suggest that better evidence may be available. Plaintiff appears to be arguing, albeit implicitly, that Mascio and Cooke may have lied, yet not even this is supported by any evidence. Neither Mascio nor Cooke had any control over the content or the fate of the speed tape, and the evidence nowhere suggests that they knew the tape would turn up missing, nor that they had any contact at the time of the accident with anyone who did. Yet both knew, when they reported the train's speed to the police, that the speed recorder had recorded the speed of the train at the time of the accident. These facts do not support an inference that Mascio and Cooke lied about the speed of the train. The loss of the speed tape is the sort of "scintilla" of evidence on the basis of which courts are admonished not to find a genuine issue of fact. *See Anderson*, 477 U.S. at 251,

2505, 2511, 91 L.Ed.2d 202 (1986). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence is of such a character that it would warrant the jury in finding a verdict in favor of that party." *Id.* at 251, 106 S.Ct. at 2511. A mere scintilla of evidence will not suffice. *Id.*

3. The affidavit of Plaintiff's expert, Douglas Newcomer, is not evidence of the train's speed, it is merely an exercise in mathematics. Mr. Newcomer simply concluded that if the train traveled 900 feet in three seconds, it must have been going faster than eighty miles per hour. Although the calculation itself is unassailable, it lacks any factual foundation. Mr. Newcomer neither visited the scene of the accident, nor reviewed any measurements of it, he merely read Mascio's deposition regarding Mascio's estimates of time and distance and calculated the train's speed on the basis of those estimates. It is clear from Mascio's answers, however, that his estimates were not statements of fact. When asked the distance from the curve preceding the Interlachen Crossing to the point of impact, Mascio responded, "[o]h heck, I'll approximate 900 feet maybe." Mascio Deposition at 71. Later he opined that the train covered this distance in three seconds. *Id.* at 79. From these two estimates alone Mr. Newcomer concluded that the train must have been traveling faster than eighty miles per hour. This conclusion is no more a statement of fact than the guesses on which it is based. Accordingly, Mr. Newcomer's affidavit is not evidence of the train's speed.

106 S.Ct. at 2511. Plaintiff has failed to discharge its burden on the issue of the train's speed.

Plaintiff relies heavily on *Stanton v. National R.R. Passenger Corp.,* 849 F.Supp. 1524 (M.D.Ala.1994), in which the court held that the loss of a speed tape by the defendant, Amtrak, justified drawing an inference that the train was traveling faster than the speed limit. In *Stanton,* however, the engineer claimed that the train was traveling at seventy-nine miles per hour, a mere one mile an hour below the speed limit. *Id.* at 1529. Here, by contrast, the margin for error—ten miles per hour—is substantially greater, and the engineer's observations are corroborated by the assistant engineer, who also observed the speedometer at the moment of impact. Nevertheless, to the extent that *Stanton* stands for the proposition that a lost speed tape justifies drawing an inference adverse to Amtrak in the face of credible evidence to the contrary, this Court declines to follow it. Here, regardless of the fate of the speed tape, Plaintiff has offered no evidence from which to conclude that the train was traveling in excess of eighty miles per hour or that Mascio and Cooke lied. Indeed, Plaintiff has offered nothing to impugn the statements of Mascio and Cooke. The reason for the disappearance of the speed tape is thus irrelevant. Accordingly, Plaintiff's excessive speed claims are preempted.

### 4. *Remaining Claims*

The final issue for the Court to determine is whether any claims remain in Plaintiff's Complaint that are not preempted. Plaintiff contends that even if its inadequate warning device and excessive speed claims are preempted, it still may proceed with claims for negligence based on Defendants' failure to stop the train before striking the Decedent. Defendants counter that such claims are necessarily preempted if the excessive speed claims are preempted. Citing *Easterwood,* Defendants remind the Court that federal law not only establishes a ceiling, but also precludes any inconsistent state tort law or regulations.

Defendants are quite correct that 49 CFR § 213.9 preempts inconsistent state laws regarding speed. As the Court understands Plaintiff's negligent failure to stop claims, however, they are not necessarily inconsistent with § 213.9. This section simply prescribes the maximum speed at which trains may operate given certain track types and conditions. It is silent as to the instances in which a train must stop to avoid colliding with an obstruction on the tracks. State laws that direct a train to stop when, for instance, a child is standing on the tracks do not conflict with federal speed limits that prescribe the speed at which the same train may travel in normal circumstances on the same track. Indeed, if Defendants' position were correct, railroads would be insulated from state tort liability regardless of whether a train attempted to stop to avoid even the most obvious obstructions, simply because federal law prescribes the speed at which they may travel absent obstructions. *Easterwood* does not support this result.[4]

Plaintiff's Complaint alleges that Defendants were negligent "[b]y failing to stop the train prior to striking the persons crossing the tracks." This claim alone may stand against each defendant.[5]

---

**4.** The Supreme Court expressly stated that it did not reach the question of whether § 213.9 preempts tort law duties such as "the duty to slow or stop a train to avoid a specific, individual hazard." *Easterwood,* 507 U.S. at 675 n. 15, 113 S.Ct. at 1743 n. 15. This reading is supported by the Eleventh Circuit's recent case, *Michael v. Norfolk Southern Ry. Co.,* 74 F.3d 271 (11th Cir.1996), in which the court stated that "while state tort claims for excessive speed are preempted, the Supreme Court specifically left open the question of whether federal law bars suit for the 'breach of related tort law duties....'" *Id.* at 274 (quoting *Easterwood* ).

**5.** Plaintiff's remaining claim is for negligent failure to stop the train *to avoid striking the Decedent.* Plaintiff cannot maintain a claim of failure to proceed slowly along the tracks in order to avoid the likelihood of hazards such as the Decedent, since such a claim is necessarily preempted along with any claims of excessive speed. In other words, a claim of failure to maintain a slow speed to avoid potential hazards is simply another way of claiming that the train was traveling at an excessive speed given the track type, location, and conditions, which *Easterwood* precludes as preempted. This is especially so given the Supreme Court's emphasis on the Secretary's consideration of potential hazards in establishing

Defendants alternatively contend that even if the negligent failure to stop claims are not preempted, their motion for summary judgment should still be granted as to these claims because no issues of fact remain as to negligence. While this may be so, because Defendants raised this argument in their reply in support of their motion, rather than in the motion itself, it is not properly before the Court. It would be improper for the Court to entertain this argument without first allowing Plaintiff an opportunity to respond. Accordingly, the Court will treat Defendants' argument concerning Plaintiff's negligent failure to stop claims, located at Part I.E. of Defendants' reply in support of motion for summary judgment, as a separate motion for summary judgment on these claims and will provide Plaintiff an opportunity to respond.

### B. PLAINTIFF'S MOTION TO STRIKE

Plaintiff moves pursuant to Federal Rule of Civil Procedure 37(b)(2)(C) to strike certain of Defendants' pleadings based on spoliation of evidence in that Defendants allegedly improperly destroyed the train's speed tape. Initially, the Court recognizes that Rule 37(b)(2)(C) applies to situations in which a party has failed to cooperate or to disclose information in violation of a court order. The rule is thus not applicable here as the Court never directed Defendants to produce the speed tape, and Defendants cooperated with Plaintiff by revealing, immediately upon request, that the speed tape did not exist.

More importantly, however, the Court finds no grounds on which to sanction Defendants for failing to retain the speed tape. As discussed in the previous section, Plaintiff has presented no evidence of the train's speed nor any reason to doubt Defendants' evidence of speed. Perhaps if no evidence of the train's speed existed, or if

Plaintiff had revealed contradictions or inconsistencies in Mascio's, Fowler's or Cooke's statements in their depositions and affidavits, there would be reason to desire the speed tape. As it stands, however, Plaintiff questioned these witnesses extensively and their testimony regarding the train's speed emerged unscathed. The fact that Defendants did not retain the speed tape does not raise an issue of fact as to the accuracy or truthfulness of these observations. With nothing to suggest that Mascio, Cooke, and Fowler are lying, the fate of the speed tape is simply irrelevant.[6] As discussed in the previous section, Plaintiff has not provided support for the proposition that a party's failure to retain certain evidence justifies drawing inferences adverse to that party, or striking pleadings, where credible alternative evidence exists. Accordingly, sanctions are not in order.

### C. PLAINTIFF'S MOTION TO RECONSIDER

Plaintiff requests reconsideration of the Court's Order of January 10, 1996, which permitted Plaintiff to depose Don Scott and to supplement its response to the motion for summary judgment. Claiming that information it learned in connection with Scott's deposition requires further explication, Plaintiff wishes to reopen discovery so that it may further investigate the loss of the speed tape. The Court, however, finds no material issues remaining to be investigated in connection with the speed tape. Plaintiff's own vehement opposition to Amtrak's evidence of speed—which Plaintiff asserts repeatedly in its memoranda—is superfluous. Plaintiff has failed to provide any reason to agree, and its own belief that Mascio, Cooke, and Fowler might be lying will not suffice.

### CONCLUSION

For the foregoing reasons, it is hereby

---

speed limits. *See* 507 U.S. at 670, 113 S.Ct. at 1741.

**6.** As stated previously, Amtrak's failure to locate the speed tape does not support an inference that Mascio and Cooke are lying about the train's speed. Such an inference would require some evidence that Mascio and Cooke played a role in the disappearance of the speed tape or at least knew that the speed tape would disappear. Such evidence is completely lacking, as is any indica-

tion that Mascio, Cooke and Fowler lied to anyone at any stage. Indeed, Police Officer Timothy Vickers, who interviewed Mascio and Fowler at the scene of the accident, stated in his deposition that both seemed to be telling the truth about the speed of the train, that they exhibited none of the bodily movements associated with lying, and that he had no reason to doubt the statements of either witness. Vickers Deposition at 81–83.

ORDERED AND ADJUDGED as follows:

1. Defendants' motion for summary judgment as to all claims except Plaintiff's negligent failure to stop claims is **GRANTED**;

2. Plaintiff shall respond to Defendants' motion for summary judgment as to Plaintiff's negligent failure to stop claims, located at Part I.E. of Defendants' reply in support of motion for summary judgment (pages 12–14), by April 8, 1996. Defendants may reply to Plaintiff's response by April 15, 1996. The parties are reminded that the only issue to be determined is whether there remain issues of fact as to whether Defendants were negligent in failing to stop the train prior to striking the Decedent. The Court will not consider further arguments on preemption.

3. Plaintiff's motion to strike offers of judgment is **DENIED**;

4. Plaintiff's motion to strike pleadings is **DENIED**;

5. Plaintiff's motion for omnibus hearing is **DENIED** in light of the pretrial conference held on January 8, 1996;

6. Plaintiff's motion to reconsider is **DENIED.**

DONE and ORDERED.