JUSTICE GRAY,
concurring in part and dissenting in part.
¶ 137 Except as specifically set forth herein, I agree with and join the Court’s opinion.
¶138 I join Justice Leaphart’s dissent on issue 3, relating to the District Court’s grant of partial summary judgment on the “adequate auditory warning” issue. Our standards regarding summary judgment have long been established and, in this regard, include a burden on the nonmoving part to raise a genuine issue of material fact once the moving party has established the absence of any such issue. As Justice Leaphart so cogently points out, the Court’s opinion on this issue largely negates that burden traditionally borne by the nonmoving party by allowing the Mickelsons to avoid summary judgment via the raising of credibility issues on nonmaterial, nonrelevant matters.
¶139 On issue 5, I join in the Court’s conclusion that the Mickelsons’ reliance on Herold is misplaced. However, I dissent from the remainder of the Court’s discussion of issue 5 and from its conclusion that, while the Mickelsons are precluded from presenting evidence relating to additional lighting or alternative lighting for the purposes of establishing MRL’s liability, they may introduce such evidence for other purposes. My dissent is based on our long-established rule that we will not address either a matter raised for the first time on appeal or a party’s change in legal theory. See, e.g., Unified Industries, Inc. v. Easley, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15 (citation omitted). The underlying rationale for our rule is that it is unfair to hold a district court in error on a basis never presented to it. Easley, at ¶ 15. Here, Herold was the Mickelsons’ sole argument on this issue before the District Court and, indeed, in its opening brief on appeal to this Court. I would resolve this issue on that basis alone and affirm the District Court.
*384 ¶ 140 Finally, I respectfully dissent from the Court’s opinion on issue 2, which is whether the District Court erred in instructing the jury as to the speed of trains. My disagreements and concerns about the Court’s analysis of this issue are several.
¶141 First, the Court does not specifically address whether the District Court’s Instruction No. 32 was improper. That instruction essentially stated that the driver of any emergency vehicle has no special privilege with regard to railroad crossings under Montana law. Given the language of §§ 61-8-347 and 61-8-348, MCA, as set forth in the Court’s opinion, I conclude that Instruction No. 32 is a proper statement of the law and that the District Court did not abuse its discretion in so instructing the jury.
¶ 142 In addition, it is my view that the Court’s discussion of the trial court’s Instruction No. 21 and Runkle is, at best, confusing. Indeed, I am unable to ascertain from the Court’s opinion whether the District Court should have instructed on a purported duty by MRL to slow for this particular crossing even absent the existence of a specific, individual hazard at the time of the accident at issue in this case, or whether it should have instructed with regard to a duty to slow only when faced with the specific conditions relating to the fire and the existence of emergency vehicles in the area of the railroad crossing at the time the train started down Evaro Hill.
¶143 This issue is more easily understood by addressing not just the instruction given by the District Court, but one of the Mickelsons’ proposed instructions, which was refused, and about which the Mickelsons also assert error. The Mickelsons’ Proposed Instruction #29 read as follows:
If, under the standard of ordinary care, a reasonable and prudent railroad would have braked the train to slow or reduce the speed of its train under the circumstances existing here, failure to do so may constitute negligence, although no ordinance or statute exists requiring such braking or slowing or reduction in speed. The railroad also has a duty to slow or stop its train to avoid a specific individualized hazard at a crossing if an ordinarily prudent railroad would have done so under the same or similar circumstances.
This proposed instruction contains two separate duties: the first, one of ordinary care relating to the circumstances existing at the time of the accident in question; and the second, one of ordinary care relating to a duty to avoid a specific, individualized hazard at a crossing.
*385 ¶ 144 With regard to the first duty set forth in the proposed instruction, I agree with the Court that, under Runkle, the instruction would have been appropriate. The problem, however, is that Easterwood — decided by the United States Supreme Court some 13 years after Runkle — effectively nullified the availability of a state tort general negligence claim regarding train speed by concluding that regulations adopted under the Federal Railroad Safety Act preempted such claims.
¶145 With regard to the second duty set forth in the Mickelsons’ Proposed Instruction #29, namely, that MRL had a duty to slow or stop the train to avoid a specific individualized hazard at a crossing if an ordinarily prudent railroad would have done so under the circumstances, and the Court’s related discussion of the “specific, individual hazard” portion of Easterwood, my concern is that neither the Court’s opinion nor the Mickelsons’ arguments are sufficiently clear to ascertain precisely what specific, individual hazard purportedly is at issue here. To the extent the Court is holding that the mere presence of emergency vehicles in the area near a crossing is sufficient to impose a duty on railroads to slow their trains, I disagree. Such a state tort law general duty to slow is precluded by Easterwood and also fails to meet the “specific, individual hazard” standard as determined in post -Easterwood cases. The cases determining that such a hazard exists so as to avoid federal preemption relate to the avoidance of a specific collision, slowing to avoid striking a child on the railway and the like. See, e.g., Armstrong v. Atchison, Topeka & Santa Fe Ry. Co. (W.D. Tex. 1994), 844 F.Supp. 1152, 1153; Bashir v. National R.R. Passenger Corp. (S.D. Fla. 1996), 929 F.Supp. 404, 412. Indeed, the contention that the mere presence of emergency vehicles in the area is a specific, individual hazard sufficient to impose a duty to slow is similar to the “presence of fog and the nearby brick facility” contention rejected as constituting specific, individual hazards in Williams v. Alabama Great Southern Railroad Co. (E.D. La. 1994), WL 419863. As the Williams court stated, Easterwood\ s “footnote [15] means what it says — namely, if possible, a train should reduce its speed in order to avoid an imminent collision.”
¶ 146 Finally, the Court’s discussion regarding proof that the train “could have easily slowed or stopped to avoid the accident” is of no legal relevance. The issue is whether there was a duty to slow. I would conclude that the duty set forth in the District Court’s Instruction No. 21 — namely, that there was a duty to slow when it was reasonable to *386 believe that the emergency vehicle would not yield and there was a substantial risk of collision — was a proper statement of the law under the Easterwood progeny addressing specific, individual hazards. See O’Bannon v. Union Pacific R. Co. (W.D. Mo. 1997), 960 F.Supp. 1411, 1420 (citations omitted). Accordingly, I would affirm the District Court on issue 2.
CHIEF JUSTICE TURNAGE joins in the concurring and dissenting opinions of Justice Leaphart and Justice Gray.